409 A.2d 420

**GENERAL ELECTRIC CREDIT CORPORATION, Appellant,**

**v.**

**Paul P. SLAWEK and Susan C. Slawek.**

Superior Court of Pennsylvania.

Argued March 23, 1979.

Filed Aug. 24, 1979.

M. Patricia Becket, Philadelphia, for appellant.

John J. Gallagher, Philadelphia, for appellees.

Before CERCONE, President Judge, and PRICE, VAN der VOORT, SPAETH, HESTER and WIEAND, JJ.

HESTER, Judge:

This is an appeal from an Order of the lower court striking a default judgment. Appellant General Electric Credit Corporation (G.E.) contends there is no defect in the record which would warrant the court's action and requests that its default judgment be reinstated. We agree and now reverse.

On August 5, 1975, appellees Paul and Susan Slawek entered into an agreement with appellant G.E. to finance the purchase of a sailboat. The Slaweks executed a promissory note in favor of G.E. in the amount of $65,849.78, payable in 118 successive monthly installments. The note entitled G.E. to secure a judgment by confession against appellees "at any time before or after maturity without process . . . with or without the filing of an averment or Declaration of Default." As part of the transaction, G.E. required the Slaweks to execute a mortgage on their Philadelphia residence.[1] On August 28, 1975, before the first installment on the loan was due, G.E. directed the prothonotary to enter a judgment by confession against appellees for the full amount of the note. Notices were sent pursuant to Pa.R.C.P. 236.

Thirteen months later, in September, 1976, the Slaweks defaulted on an installment payment for the first time and failed to make payments for the following three months as well. G.E. sent to appellees a "Notice of Intention to Accelerate Balance of Payments and Foreclosure" in compliance with Act of January 30, 1974, P.L. 13, No. 6, § 403 (41 P.S. § 403) and instituted a complaint in assumpsit for

[1]. The record before us does not include a copy of the mortgage, but both parties, as well as the court below, refer to it.

$66,026.40 on February 9, 1977. Judgment by default was taken April 26, 1977. Thereafter on June 17, 1977, appellees filed their Petition to Strike the default judgment, alleging the statutory notice of Act No. 6, supra, was required to have been given prior to the August, 1975 confession of judgment, and that such a defect on the face of the record warranted striking the judgment. The lower court agreed and, by decree dated September 8, 1977, ordered the default stricken. This appeal by G.E. followed.[2]

■ A motion to strike will not be granted unless a fatal defect in the judgment appears on the face of the record. *Cameron v. Great Atlantic & Pacific Tea Company*, 439 Pa. 374, 266 A.2d 715 (1970); *James v. Reese*, 250 Pa.Super. 1, 378 A.2d 422 (1977). If the record is self-sustaining, the judgment cannot be stricken. *Pattinato v. Moody*, 248 Pa. Super. 32, 274 A.2d 1302 (1977); *Fleck v. McHugh*, 241 Pa.Super. 307, 361 A.2d 410 (1976).

The dispute both below and on appeal has centered on the applicability of Act No. 6 (41 P.S. § 101 *et seq.*), supra, to the facts of the instant controversy. Act No. 6 is, in large part, a consumer measure regulating maximum lawful interest rates, particularly with reference to residential mortgages, and providing protective safeguards accruing to the consumer before a foreclosure action on a residential mortgage may be instituted.[3] Thus, Sec. 403, entitled, "Notice of Intention to Foreclose", provides in part:

2. A three judge panel of this Court originally affirmed the lower court by a per curiam order, *General Electric Credit Corp. v. Slawek*, 261 Pa.Super. 435, 395 A.2d 984 (1978) (HESTER, J., dissented). We then granted G.E.'s petition for reargument and the appeal is now before the Court *en banc*.

3. The purposes of the Act are succinctly chronicled in its title: Title of Act:
   An Act regulating agreements for the loan or use of money; establishing a maximum lawful interest rate in the Commonwealth; providing for a legal rate of interest; detailing exceptions to the maximum lawful interest rate for residential mortgages and for any loans in the principal amount of more than fifty thousand dollars and federally insured or guaranteed loans and unsecured, uncollateralized loans in excess of thirty-five thousand dollars and busi-

(a) Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

Section 403 notice must include, inter alia, the amount in default, the debtor's right to cure the default and the time within which he must cure to avoid foreclosure. Sec. 403(c). Payment by the debtor of the amount in default will prevent foreclosure and restores him to the same position as if the default had not occurred. 41 P.S. § 404.

■■■ Section 403 notice is mandatory. It must precede any action by the residential mortgage lender whereby he "accelerates the maturity" of the obligation, institutes "legal action including . . . foreclosure", or repossesses "any security" of the debtor. Sec. 403(a). *Ministers & Missionaries Benefit v. Goldsworthy*, 253 Pa.Super. 321, 385 A.2d 358 (1978). Appellees have contended throughout these proceedings that the types of actions contemplated by Sec. 403(a) must include the confession of judgment procedure, see Pa.R.C.P. 2950–2961, and that Sec. 403(c) notice must be given "at least thirty days in advance" of entry of judgment by confession. The Slaweks concede that G.E. complied

ness loans in excess of ten thousand dollars; providing protections to debtors to whom loans are made including the provision for disclosure of facts relevant to the making of residential mortgages, providing for notice of intention to foreclose and establishment of a right to cure defaults on residential mortgage obligations, provision for the payment of attorney's fees with regard to residential mortgage obligations and providing for certain interest rates by banks and bank and trust companies; clarifying the substantive law on the filing of an execution on a confessed judgment; prohibiting waiver of provisions of this act, specifying powers and duties of the secretary of banking, and establishing remedies and providing penalties for violations of this act. 1974, Jan. 30, P.L. 13, No. 6. See generally, *Ministers & Missionaries Benefit v. Goldsworthy*, 253 Pa.Super. 321, 385 A.2d 358 (1978). Several amendments to the Act were effected in 1978, Act No. 258, approved October 5, 1978.

with the Act's notice requirements prior to filing its complaint in assumpsit in February, 1977, but argue Sec. 403 notice should have *also* preceded the judgment by confession taken in August, 1975. G.E. counters that Sec. 403 does not apply to the confessed judgment particularly where, as here, there was no default in August, 1975, hence obviating the need to advise the debtor of his "right . . . to cure the default." Sec. 403(c)(3); Sec. 404.[4] The notice provisions do not apply, under G.E.'s interpretation, until 30 days prior to filing the complaint in assumpsit or other "appropriate action", Sec. 407, Pa.R.C.P. 2981–2986.[5] We think Sec. 407, with the procedural rules promulgated thereunder, compel the conclusion that G.E.'s construction is correct.

Sec. 407 provides in pertinent part:

4. It is, of course, well settled that a judgment by confession may be taken even before the debt becomes due, if so authorized by the warrant of attorney accompanying the note. *Rosenthal v. Richman*, 406 Pa. 149, 176 A.2d 426 (1962); *Triangle Bldg. Supplies & Lumber Co. v. Zerman*, 242 Pa.Super. 315, 363 A.2d 1287 (1976); *Rose v. Cohen*, 193 Pa.Super. 454, 165 A.2d 264 (1960).

5. Both arguments assume, as did the court below, that the protective provisions of Act No. 6 are implicated in the instant factual setting. As noted in its title and various sections, Act No. 6 concerns itself, in large measure, with the "residential mortgage" obligation and with the procedures to be employed in the event of default thereof. The existence of a "residential mortgage" is then, to some extent, a triggering mechanism which will bring into play the Act's provisions, including notice prior to foreclosure. "Residential mortgage" is defined in Sec. 101 as follows:

"Residential Mortgage" means an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit.

The note in the instant case was in the sum of $65,849.78 which apparently included finance charges and other fees. The *principal* amount of the loan, however, was less than $50,000 which would satisfy the statutory amount of Sec. 101. Appellant's brief before three-judge panel at p. 7. Further, the execution of the mortgage document, with recording, satisfies the "security document" and "lien" requirements of the above definition. We thus conclude a "residential mortgage" existed in the instant case. But see, fn. 9, infra, relating to the 1978 Amendments to Act No. 6.

### § 407 Confession of judgment

(a) As to any residential mortgage, a plaintiff shall not have the right to levy, execute or garnish on the basis of any judgment or decree on confession, whether by amicable action or otherwise, or on a note, bond or other instrument in writing confessing judgment until plaintiff, utilizing such procedures as may be provided in the Pennsylvania Rules of Civil Procedure, files an appropriate action and proceeds to judgment or decree against defendant as in any original action. The judgment by confession shall be changed as may be appropriate by a judgment, order or decree entered by the court in the action. After the above mentioned original action has been prosecuted and a judgment obtained, that judgment shall merge with the confessed judgment and the confessed judgment shall be conformed as to amount and execution shall be had on the confessed judgment. The parties to the action shall have the same rights as parties to other original proceedings. Nothing in this act shall prohibit a residential mortgage lender from proceeding by action in mortgage foreclosure in lieu of judgment by confession if the residential mortgage lender so desires.

The section thus regulates the *post*-judgment by confession procedures by requiring the creditor to file an "appropriate action" prior to his right to "levy, execute, or garnish." This "appropriate action" ". . . shall be commenced by filing a complaint with the prothonotary", Rule 2983, and shall include:

(1) the names of the parties to the confessed judgment which is the subject matter of the action and the court, term and number, and the date and amount thereof;

(2) a copy of the notice required by Section 403(a) of the Act and the date it was sent;

Note: Section 403 of the Act replaces the notice required under Rule 2958.

(3) an itemization of the amount claimed to be due;

(4) a demand for the judgment required by Section 407 of the Act.

Rule 2984.

■ A number of observations may be made by reading Sec. 407 together with the procedural rules effectuating its provisions. First, the Act clearly contemplates that a mortgage lender may precede his foreclosure action with a judgment by confession. Sec. 407 does not forbid such a procedure, but merely requires an additional step, the filing of an "appropriate action", before execution may issue upon the judgment previously obtained. Second, the filing of a confessed judgment is not at all hampered or delayed by Act No. 6. A creditor may still proceed directly to his judgment by confession even where there is no default, provided the instrument so authorizes. See fn. 4, supra. However, once default occurs, and the mortgage lender seeks to foreclose, certain procedural requirements in Act No. 6 must first be complied with, even though the confessed judgment has already been entered. Thus foreclosure and execution-type actions are delayed by the Act, but not the initial confessed judgment. Third, Sec. 403 notice must be sent to the debtor prior to the "appropriate action/complaint" procedure of Sec. 407 and Rules 2981–2986. Such is the clear import of Rule 2984(2) which requires that a copy of the notice, as well as the date it was sent, be appended to the complaint. There is nothing in the Act or the Rules which would suggest that Sec. 403 notice must also precede the confessed judgment. Such a construction, which appellees would have us adopt, would require that notice be sent *twice*: once before the confessed judgment and again prior to instituting the Rule 2983 complaint. We do not think the Act or the Rules intimate such duplicative procedures.[6]

**6.** This conclusion is further buttressed by the note within Rule 2984: "Section 403 of the Act replaces the notice required under Rule 2958". The latter was a post-confessed judgment/pre-execution type notice. By implication, then, Sec. 403 notice is also a post-confession/pre-execution notice. Our timing of the notice places it in the gap between a confessed judgment and a Rule 2983 complaint.

The tenor of Sec. 407 and the Rules, as they bear upon required notice to the debtor, is, then, clear: the mortgage lender may obtain his judgment by confession under the authorizing instrument without prior statutory notice to the debtor. If default occurs, the lender may foreclose by "appropriate action/complaint" which must be preceded, by at least thirty days, a notice under Sec. 403. Once judgment is obtained on the complaint, it shall merge with the confessed judgment and the court shall enter an order conforming the confessed judgment with the judgment obtained on the complaint. Execution may then be had on the confessed judgment as in any other proceeding. The legislature and Rules committee did not deem it necessary to retard the creditor's historical privilege of obtaining a judgment by confession, without prior notice, against his debtor.[7] Being primarily a consumer measure, however, Act No. 6 postpones actual acceleration and foreclosure until after the debtor has received notice and an opportunity to cure the default. Our construction of the Act is consistent with these objectives. See, *Goldsworthy*, supra.

An additional consideration in the present case leads us to conclude Sec. 403(a) does not embrace the confessed judgment. The notice specified in Sec. 403(c) includes, *inter alia*, the amount of default, right to cure, and time within which to cure the default. The judgment by confession was taken in the instant case *before* a default ever occurred, yet appellees insist they should have been advised of their right to cure a default which had not yet transpired. "This ability to prevent foreclosure and avoid acceleration, however, is distinctly delimited; it necessarily presupposes the existence of a default curable in the prescribed manner." *Goldsworthy*, supra, 253 Pa.Super. at 332, 385 A.2d at 364. Here,

**7.** It is instructive to note that in Pennsylvania, a creditor has never been required to give the debtor notice prior to entering judgment on the note, so long as the note itself does not require pre-judgment notice. *Swarb v. Lennox*, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972); notices need not be sent until *after* judgment is entered. Pa.R.C.P. 236. Our construction of Act No. 6 does not alter this settled practice.

there was no default in August, 1975 and it would thus be utterly without logic or common sense to compel G.E. to allow the Slaweks a statutory 30 days to cure a non-existent default.[8]  We will not construe the Act to effect such an "absurd [and] unreasonable" result.  1 Pa.C.S.A. § 1922(1).[9]

We thus conclude statutory notice prior to the August, 1975 confessed judgment was not required.  The lower court erred in holding such notice was necessary.  Its order striking the default judgment must therefore be reversed and the case remanded for further proceedings.

Reversed and remanded.

SPAETH, J., files a concurring opinion.

PRICE, J., dissents.

**8.**  Our attention is further directed to the title of Sec. 403 "Notice of Intention to Foreclose" and to the reference in Sec. 404(a) to "Notice of Intention to Foreclose."  The procedural safeguards of these sections are clearly directed toward legal actions in the nature of foreclosure *after* the debtor has defaulted.  As we have already noted, the confessed judgment in the instant case was entered *before* default and thus could not be construed to constitute a foreclosure action within the ambit of the Act's pre-judgment notice provisions.

**9.**  The legislature, by its 1978 Amendments to Act No. 6's definition of "residential mortgage", would further exclude the instant transaction from the Act's coverage.  The amendment to Sec. 101 provides:
"Residential mortgage" means an obligation to pay a sum of money in an original bona fide principal amount of fifty thousand dollars ($50,000) or less, evidenced by a security document and secured by a lien upon real property located within this Commonwealth containing two or fewer residential units or on which two or fewer residential units are to be constructed and shall include such an obligation on a residential condominium unit.  The term "residential mortgage" shall apply only to transactions where the principal purpose of the transaction is the purchase of, or improvement or repair in connection with the acquisition of, residential real property, but does not include a transaction in which no purpose of the transaction is the purchase, improvement or repair of residential real estate.
Hence, if the principal purpose of the transaction is not "the purchase . . . improvement or repair" of residential real estate, the Act will not apply.  In the instant case, the mortgage was given, not in connection with the purchase, improvement, or repair of the realty, but rather to secure a loan for the purchase of a sailboat.

SPAETH, Judge, concurring:

I agree both with the result reached and the analysis employed by the majority except that I should reserve judgment on the question of whether Act No. 6 applies to the mortgage transaction in this case. It may well be that Act No. 6 should apply, *see* 41 P.S. § 101 (residential mortgage lender defined broadly); *see also* 1978 Amendments (supports argument that previous version of Act applied to this type of transaction), but I see no need to decide the issue where, as here, neither party has disputed the applicability of the Act, so that we can treat the issue as stipulated. I should therefore assume that the Act applies and hold only that no notice was required prior to the filing of the confession of judgment and that for that reason the lower court's order striking appellant's judgment must be reversed.