## Lafayette Trust Bank v. JAJ Corporation

*Thomas P. Stitt,* for plaintiff.
*Terence L. Faul,* for defendants.

FRANCIOSA, *J.,* September 10, 1980—This matter involves defendants' request to strike off a writ of execution.

On February 7, 1980 Lafayette Trust Bank executed an installment loan agreement with JAJ Corporation. The principal purpose of the transaction was to provide for the purchase of inventory for JAJ Corporation. As collateral, a judgment note in favor of the bank was executed in the amount of $15,000. Although the loan was for the corporation, James R. Cressman and Ann M. Cressman signed as co-makers of the note. In addition, the judgment note indicated that the personal residence of the individual comakers was included as additional security. On February 21, 1980 the original $15,000

judgment note was filed with the Prothonotary of Northampton County under no. 1980-J-1815. No payments were ever made on this note and on May 2, 1980 a letter of default was sent out to defendants. On June 16, 1980 the bank filed a praecipe for a writ of execution on the home and real estate of the Cressmans. Levy was made by the Sheriff of Northampton County and a sheriff's sale was scheduled for August 8, 1980.

On August 8, 1980, the scheduled sale date, defendants sought a stay. Initially, plaintiff objected; however, a stay subsequently was agreed to upon a stipulation whereby defendants waived all claims for costs and attorney fees incident to the writ of execution. Moreover, the stay was agreed to as an accommodation to the court to provide it with a 30-day period in which to render a decision. The complexity of the situation arises because of recent changes in the governing statute. Section 407 of the Act of January 30, 1974, P.L. 13 (Act no. 6), 41 P.S. §407(a), as recently amended,[1] reads as follows:

"§407. Confession of judgment

"(a) As to any residential real property, a plaintiff shall not have the right to levy, execute or garnish on the basis of any judgment or decree on confession, whether by amicable action or otherwise, or on a note, bond or other instrument in writing confessing judgment until plaintiff, utilizing such procedures as may be provided in the Pennsylvania Rules of Civil Procedure, files an appropriate action and proceeds to judgment or decree against defendant as in any original action. The judgment by confession shall be changed as may be appropriate by a judgment, order or decree entered by the court in the action. After the above men-

---

1. The amendment occurred in 1978.

tioned original action has been prosecuted and a judgment obtained, that judgment shall merge with the confessed judgment and the confessed judgment shall be conformed as to amount and execution shall be had on the confessed judgment. The parties to the action shall have the same rights as parties to other original proceedings. Nothing in this act shall prohibit a residential mortgage lender from proceeding by action in mortgage foreclosure in lieu of judgment by confession if the residential mortgage lender so desires."

The sole dispute between the parties has centered on the meaning of the phrase "files an appropriate action." Defendants contend that a complaint in assumpsit is required. The bank, on the other hand, argues that "it took all of the appropriate action it was required to take by providing the defendants with the thirty-day notice letter on May 2, 1980, prior to the institution of execution on June 19, 1980."

Act no. 6, supra, is largely a consumer measure providing safeguards before a foreclosure action on a residential mortgage may be instituted. In keeping with this statutory purpose, section 407 regulates the post-judgment by confession procedures by requiring the creditor to file an "appropriate action" prior to his right to "levy, execute or garnish."

A number of observations may be made by reading section 407 together with the companion provisions of the act. First, a creditor may still proceed directly to his judgment by confession even where there is no default, provided the instrument so authorizes. However, once default occurs, certain procedural requirements in Act no. 6 must first be complied with, even though the confessed judgment already has been entered. Thus, foreclosure and execution actions are delayed by the act, but

not the initial confessed judgment.

Here, the length of that delay is the question. If defendants are correct, there could be a considerable period of post-confessed judgment delay. A complaint would bring into play all of the responsive pleadings allowed under our Rules of Civil Procedure, as well as the built-in delays incident to the disposition of issues raised by the pleadings, regardless of their merit. If the Bank's position is adopted, the notice of intention to foreclose will limit the delay to a period of 30 days.

As far as we can determine, no reported decision is directly on point. In General Elec. Credit Corp. v. Slawek, 269 Pa. Superior Ct. 171, 409 A. 2d 420 (1979), the Superior Court dealt with the issue of notice prior to the confession of judgment, but not with the question of post-confessed judgment/pre-execution type of procedures. Also, that decision was interpreting a previous version of section 407 before the 1978 amendments.

However, it is instructive to note that the majority opinion authored by Judge Hester includes the following statement, at _____ Pa. Superior. Ct. _____, 409 A. 2d 424:

"If default occurs, the lender may foreclose by 'appropriate action/complaint' which must be preceded, by at least thirty days, a notice under Sec. 403. Once judgment is obtained on the complaint, it shall merge with the confessed judgment and the court shall enter an order conforming the confessed judgment with the judgment obtained on the complaint. Execution may then be had on the confessed judgment as in any other proceeding."

The bank complains that the post-confessed judgment procedures suggested by Judge Hester give the debtor an opportunity to create a period of delay solely for the purpose of gaining more time to

cure a default. Clearly, such a construction does retard the creditor's right to foreclosure. But, Act no. 6 is primarily a consumer measure, and we think it necessarily presupposes that a postponement of foreclosure is consistent with the objectives of the legislation.[2]

An alternative argument submitted by the bank is that section 407 should not be construed to apply to commercial loans. We conclude that the 1978 amendments do not support the exclusion of the instant transaction from the act's coverage. As previously written, section 407 turned on the principal purpose of the loan and applied only to an obligation arising under a "residential mortgage" type of a transaction. The legislature by its 1978 amendments substituted the broader term "residential real property"[3] in place of "residential mortgage."

Hence, the principal purpose of a transaction no longer triggers the operation of section 407. Instead, that section now is applicable to "residential real property" whenever a plaintiff seeks ". . . to levy, execute or garnish on the basis of any judgment or decree on confession. . . ."

Further, the tenor of the amendments suggest that section 407 was intended to be broader than other sections of the act. For example, those sections of the act where a "residential mortgage" re-

2. Perhaps the act will boomerang on the average consumer by making it even more difficult to obtain residential mortgages; however, that consideration was for the legislature's attention, not ours.

3. "Residential real property" means real property located within this Commonwealth containing not more than two residential units or on which not more than two residential units are to be constructed and includes a residential condominium unit.

mains a triggering mechanism were not revised to include the broader term "residential real property." We therefore assume that section 407, as amended, was directed towards all executions against "residential real property" regardless of the basis of the judgment. The preamble to the 1978 Amendments, Act of October 5, 1978, P.L. 1100, encourages us to adopt this view. In part, it reads:

"Amending the Act of January 30, 1974 (P.L. 13, No. 6) entitled 'An act regulating agreements for the loan or use of money . . . adding a definition of a new term: "residential real property" . . . [and] clarifying the intent of residential property subject to confession of judgment. . . .'"

In conclusion, we do construe the act as excluding commercial transactions at the pre-confession of judgment stage. However, the amended statutory scheme renders this advantage meaningless. Once the execution stage is reached, the lender is back to ground zero as to foreclosure on "residential real property." This is the effect caused by using a different triggering mechanism in section 407.

For the above reason, we enter the following

## ORDER

And now, September 10, 1980, in accordance with the foregoing opinion, it is ordered, adjudged and decreed as follows:

(1) that plaintiff must take appropriate action by filing a complaint.

(2) that the 30-day notice requirement under section 403 of Act no. 6, supra, is deemed inapplicable and need not be further complied with by the plaintiff prior to the filing of its complaint.

(3) once judgment is obtained on the complaint, it shall merge with the confessed judgment and the court shall enter an order confirming the confessed judgment with the fresh judgment obtained on the complaint. Execution may then be had on the confessed judgment as in any other proceeding.