In re Lorenzo A. SHARP, Lorraine Sharp, Debtors.

Lorenzo SHARP, Lorraine Sharp, Plaintiffs,

v.

FIDELITY BOND AND MORTGAGE CO., and Commonwealth of Pennsylvania State Employees Retirement Fund, and United States Department of Housing and Urban Development, and Sheriff of Philadelphia County, Defendants.

Bankruptcy No. 82–00637G.

Adv. No. 82–1631G.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 26, 1982.

Janet Sonnenfeld, Philadelphia, Pa., for plaintiffs/debtors Lorenzo Sharp and Lorraine Sharp.

Ralph G. Wellington, Joseph G. DeRespino, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants, Fidelity Bond and Mortg. Co., Com. of Pennsylvania State Employees Retirement Fund and Secretary of U.S. Dept. of Housing and Urban Development.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue before us is whether a sheriff's sale of the debtors' property should be set aside because of the debtors' allegations that they did not receive notice of the sale as required by Pennsylvania law. We conclude that the sale should be set aside because the mortgagee has failed to prove that it complied with the mandatory notice provisions of 41 P.S. § 403 ("Act 6 notices") and because the mortgagee failed to make a good faith investigation to ascertain the last known address of the debtors pursuant to Pa.R.Civ. 3129(a).

The facts of the instant case are as follows:[1] Lorraine and Lorenzo Sharp ("the debtors") owned real property located at 4645 Old York Road, Philadelphia, Pennsylvania. Fidelity Bond and Mortgage Company ("the mortgagee") managed a mortgage on the premises for the mortgage investor, Commonwealth of Pennsylvania State Employees Retirement Fund. The mortgage on the premises was insured by the United States Development of Housing and Urban Development ("HUD").

In March of 1981, the debtors' defaulted on the mortgage and in July of 1981 the mortgagee instituted foreclosure proceedings against the debtors. On November 16, 1981, a default judgment was entered against the debtors for having failed to contest the foreclosure action and on January 4, 1982, the premises in question was sold at a sheriff's sale. The property was subsequently deeded to HUD on January 18, 1982. During the foreclosure and sale proceedings, the subject residence was occupied by tenants of the debtors. On February 17, 1982, the debtors filed a petition for an adjustment of their debts under chapter 13 of the Bankruptcy Code ("the Code"). The debtors subsequently scheduled the subject premises (already having been sold at sheriff's sale on January 4, 1982) as a jointly owned asset of the debtors' estate in their chapter 13 statements. Upon learning of the January 4 sheriff's sale, the debtors filed the instant complaint seeking to set aside that sale alleging that they had no knowledge of the sheriff's sale until March of 1982, approximately three (3) weeks after the filing of their chapter 13 petition.[2]

■ The mortgagee initially contends that we do not have jurisdiction to determine the validity of the sheriff's sale apparently because the instant foreclosure sale took place, and the deed was passed and recorded, before the debtors filed their chapter 13 petition. Therefore, the mortgagee contends, the property in question is not subject to the automatic stay provisions of section 362(a) of the Code. We disagree.

■ Section 541 of the Code provides that the commencement of a case under sections 301, 302 or 303 creates an estate and that the estate is comprised of all legal or equitable interests of the debtor in property, wherever located, as of the date the case is commenced.[3] However, the existence and nature of the debtor's interest in property are determined by nonbankruptcy law. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); 4 *Collier on Bankruptcy,* ¶ 541.02[1] at 541–10 (15th ed. 1982). Consequently, our determination of the validity of the instant sheriff's sale will, in and of itself, establish whether the debtors had an interest in the subject property as of the date their chapter 13 case was commenced since if we decide that the sheriff's sale was invalid under Pennsylvania law then the debtors would still possess an interest in the subject property as contemplated by section 541(a) of the Code. On the other hand, if we conclude that the sheriff's sale was lawfully conducted then

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of the Rules of Bankruptcy Procedure.

2. Defendant Sheriff of Philadelphia County failed to answer or file a responsive pleading and failed to appear on the date of the trial in this matter and we subsequently entered judgment by default against the Sheriff on August 2, 1982 (N.T. 8/2/82 at 5).

3. 11 U.S.C. 541(a).

the debtors would have no interest in the property and we would no longer have any jurisdiction over the disposition of that property. Consequently, we conclude that we have jurisdiction to determine whether the debtors retained any legal or equitable interest in the property in question at the time they filed their petition—and the validity or invalidity of the sheriff's sale itself is dispositive on that issue.

■ In any event, an alternative jurisdictional ground exists because the mortgagee committed a flagrant procedural error by failing to file its objection to this court's jurisdiction when it filed its original answer to the debtors' original complaint. Rule 915(a) of the Rules of Bankruptcy Procedure [4] provides:

(a) Waiver of Objection to Jurisdiction. Except as provided in Rule 112 and subject to Rule 928, a party waives objection to jurisdiction of an adversary proceeding or a contested matter and thereby consents to such jurisdiction if he does not make objection by a timely motion or answer, whichever is first served.

*See Rules of Bankruptcy Procedure,* Rule 915(a), 11 U.S.C.[5]

The mortgagee's answer contained no objection to our jurisdiction. Consequently, since the mortgagee failed to object properly to our jurisdiction at its first opportunity —namely, when it filed its answer to the debtors' original complaint—we conclude that it thereby consented to our jurisdiction over the instant controversy. *In re Herman Hassinger, Inc.,* 22 B.R. 948 (Bkrtcy.E. D.Pa.1982); *In re Hotel Associates, Inc.,* 22 B.R. 964 (Bkrtcy.E.D.Pa.1982).

We have serious doubt as to whether the necessary "Act 6" notices were ever sent to 4645 Old York Road. 41 P.S. section 403 (Purdon pamphlet 1982–83) provides:

§ 403 Notice of intention to foreclose.

(a) Before any residential mortgage lender may accelerate the maturity of any residential mortgage obligation, commence any legal action including mortgage foreclosure to recover under such obligation, or take possession of any security of the residential mortgage debtor for such residential mortgage obligation, such person shall give the residential mortgage debtor notice of such intention at least thirty days in advance as provided in this section.

(b) Notice of intention to take action as specified in subsection (a) of this section shall be in writing, sent to the residential mortgage debtor by registered or certified mail at his last known address and, if different, at the residence which is the subject of the residential mortgage.

(c) The written notice shall clearly and conspicuously state:

(1) The particular obligation or real estate security interest;

(2) The nature of the default claimed;

(3) The right of the debtor to cure the default as provided in section 404 of this act and exactly what performance including what sum of money, if any, must be tendered to cure the default;

(4) The time within which the debtor must cure the default;

(5) The method or methods by which the debtor's ownership or possession of the real estate may be terminated; and

(6) The right of the debtor, if any, to transfer the real estate to another person subject to the security interest or to refinance the obligation and of the transferee's right, if any, to cure the default.

---

**4.** Although the Rules of Bankruptcy Procedure were promulgated under the Bankruptcy Act of 1898, they remain in effect under the Code. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 405(d), 92 Stat. 2683 (1978).

**5.** "The premise of subdivision (a) is that a party to any controversy being litigated in the bankruptcy court must object to the court's jurisdiction at the first opportunity in order to avoid being deemed to have consented thereto."

*See Advisory Committee's Note, Rules of Bankruptcy Procedure,* Rule 915(a), 11 U.S.C.

(d) The notice of intention to foreclose provided in this section shall not be required where the residential mortgage debtor, has abandoned or voluntarily surrendered the property which is the subject of a residential mortgage.

The Pennsylvania Superior Court has stated that "[s]ection 403 notice is mandatory. It *must* precede any action by the residential mortgage lender whereby he 'accelerates the maturity' of the obligation, institutes 'legal action including . . . foreclosure,' or repossesses 'any security' of the debtor" (emphasis added). *General Electric Credit Corp. v. Slawek,* 269 Pa.Super. 171, 176, 409 A.2d 420, 422 (1979) *citing Ministers & Missionaries Benefit v. Goldsworthy,* 253 Pa.Super. 321, 385 A.2d 358 (1978).

On cross examination, the mortgagee's foreclosure processor testified that the Act 6 notices were originally addressed to 4045 Old York Road, which is neither the address of the premises in question nor the debtors' current address, rather than 4645 Old York Road (N.T. 8/2/82 at 55). The mortgagee's foreclosure processor further testified that these notices were corrected with the proper address before they were mailed out (N.T. 8/2/82 at 55). However, a copy of the Act 6 notice that was actually in the prothonotary's file shows the address on those notices to be 4045 Old York Road (N.T. 8/2/82 at 58). We cannot understand how the Act 6 notices could, as the foreclosure processor testified, have been corrected before they were sent out if the notices filed with the prothonotary contained the wrong addresses. Moreover, the foreclosure processor testified that it was possible that at the time the case was sent to an attorney for foreclosure the correction had not yet been made (N.T. 8/2/82 at 58). Most importantly, the mortgagee's foreclosure processor admitted recording a telephone conversation between herself and the mortgagee's foreclosure counsel wherein the foreclosure counsel, in discussing the debtors' complaint, stated that "maybe we should just give in because the Act 6 letters were sent to the wrong address" (N.T. 8/2/82 at 59). Consequently, we conclude that the mortgagee has not conclusively demonstrated that the Act 6 notices were sent to the proper address.

In addition, we are not convinced that the mortgagee made a good faith investigation to ascertain the current address of the debtors as required by Pa.R.Civ.P. 3129(a) (Purdon pamphlet 1982–83) which provides:

(a) No writ of execution to sell real property shall issue upon a judgment until the plaintiff or some person on his behalf has filed of record with the prothonotary an affidavit setting forth to the best of his knowledge, information and belief the name and last known address of the owner or reputed owner and of the defendant in the judgment. A copy of the affidavit shall be delivered to the sheriff together with the writ of execution. If after a good faith investigation the name of the owner or reputed owner or his address or the whereabouts of the defendant in the judgment cannot be ascertained, the affidavit shall so state.

The debtors' current address—and their address at the time of the sheriff's sale at issue—is 934 Lindley Avenue, Philadelphia, Pennsylvania. The mortgagee contends that it did not receive notice of the debtors' new address until after the sheriff's sale had taken place. This defense, we think, misses the point. Rule 3129(a), *supra,* imposes upon the mortgagee an affirmative duty to make a reasonable, good faith investigation to ascertain the debtors' current address. We fail to see how this duty was met in light of the fact that: (1) the debtor-husband testified that in March of 1981 he contacted the mortgagee regarding insurance for 4645 Old York Road and, at the same time, gave it his new address at 934 Lindley Avenue (N.T. 8/2/82 at 34); [6] (2) the mortgagee failed to inquire of the debtors why the alleged attempted notices were continually ignored despite the fact that it had several phone conversations with the debtor-husband as late as December of

6. A copy of the insurance binder containing both of the debtor's addresses was apparently forwarded to the mortgagee. (*See* Exh. P–3 and notes of testimony at 24).

1981; and (3) the mortgagee failed to ascertain the debtors' current address after the deputy sheriff reported in September of 1981 that he had served a tenant (and not the debtors) with a copy of the complaint in foreclosure.[7] Consequently, we conclude, given the above-mentioned factors and given the fact that no correspondence of any sort had even been sent to 934 Lindley Avenue, that the mortgagee did not make a good faith investigation to ascertain the debtors' current address within the meaning of Pa.R.Civ.P. 3129(a).

Finally, the mortgagee contends that a party objecting to a sheriff's sale must, under Pennsylvania law, make such objection not later than ten (10) days after the filing of the sheriff's schedule of distribution.[8] In all the cases cited by the mortgagee, the parties attempting to have a sale set aside had actual knowledge that the sale had taken place and could, therefore, have filed within the requisite ten day period. In the case at bar, however, the mortgagee has not proven to our satisfaction that the debtors had actual knowledge of the sheriff's sale.[9] Consequently, we conclude that the authorities relied upon by the mortgage are inapplicable under the facts of the instant case.

While we are mindful of the fact that the mortgagee sent a letter to the debtors at 4645 Old York Road advising them that the mortgage had been referred to a foreclosure attorney[10] and while it appears that the deputy sheriff posted the premises at 4645 Old York Road on October

10, 1981[11] and while the debtors may have been given telephone notice of the sheriff's sale in December of 1981, we conclude that these efforts cannot serve as a substitute for statutory compliance and that the mortgagee's failure to comply with the section 403 notice requirement and with Pa.R. Civ.P. 3129(a) mandates that the January 4, 1982 sheriff's sale of the debtors' residence at 4645 Old York Road be set aside. Accordingly, we will grant the debtors' complaint to set aside the sheriff's sale and to direct HUD (the present title holder) to reconvey the premises to the debtors.

---

**7.** The tenant testified that on or about October 10, 1981, a man came to 4645 Old York Road and asked him if the debtor-husband lived there. The tenant testified that he gave the visitor his name and telephone number but that the visitor left no papers with him. The tenant further testified he gave the visitor his name and telephone number but that the visitor left no papers with him. The tenant further testified that he saw no notices posted on 4645 Old York Road in October of 1981 or at any other time he lived there. However, the tenant also testified that at one point a piece of certified mail addressed to "occupant" came to 4645 Old York Road but that he threw it away, apparently without reading it or notifying the debtors (N.T. 8/2/82 at 36). On the other hand, a deputy sheriff for Philadelphia testified that he

posted the premises at 4645 Old York Road on October 10, 1981 (N.T. 8/2/82 at 80).

**8.** See Concord-Liberty Savings and Loan Ass'n. v. NTC Properties, Inc., 454 Pa. 472, 312 A.2d 4 (1973); Garrison v. Erb, 424 Pa. 306, 227 A.2d 848 (1967); Adal Corp. v. Wells, 67 Pa.D. & C.2d 297 (1974).

**9.** On January 12, 1982, eight (8) days after the premises were sold by the sheriff, defendant HUD sent the debtors a letter stating that their property would be foreclosed upon, probably within 60 to 90 days. See Exh. P–2.

**10.** See Exh. D–6.

**11.** See Exh. D–9.