In re David W. BRENNAN, Jr., Deborah A. Brennan, Debtor.

David W. BRENNAN, Jr., Deborah A. Brennan, Plaintiffs,

v.

KNIGHTS OF COLUMBUS FEDERAL CREDIT UNION, Defendant.

Bankruptcy No. 81–03899G.
Adv. No. 86–0699G.

United States Bankruptcy Court, E.D. Pennsylvania.

March 27, 1987.

As Amended April 9, 1987.

Mitchell W. Miller, Miller and Miller, Philadelphia, Pa., for debtor/plaintiffs, David W. Brennan, Jr. and Deborah A. Brennan.

Lawrence J. Tabas, Leona Mogavero, Charen & Goldberg, Philadelphia, Pa., for defendant, Knights of Columbus Federal Credit Union.

## OPINION

BRUCE FOX, Bankruptcy Judge:

This is an adversary proceeding brought by two chapter 7 bankruptcy debtors, who received their discharge in 1982, against a creditor who held judicial liens on residential real property owned by the debtors at the time they filed their petition. In the course of the bankruptcy, the debtors avoided the liens created by two confessed judgments which were entered as security for the debtors' indebtedness. The debtors, however, inadvertently failed to obtain any relief from the bankruptcy court with respect to a third judgment, which was entered by this creditor in an assumpsit action and was based primarily on the same indebtedness as the two confessed judgments. The debtors now request that the court enter an order avoiding the third judgment lien and requiring the creditor to return to the debtors the funds the creditor received as a result of a post-discharge sale of the real property.

For the reasons set forth below, I will enter an order which: (1) declares that the avoidance of the confessed judgments also had the effect of avoiding, in part, the assumpsit judgment; (2) denies the debtors' motion to avoid the balance of the lien.[1]

### I.

Plaintiffs David W. Brennan, Jr. and Deborah A. Brennan (hereinafter "the debtors") filed a chapter 13 bankruptcy petition in this court on September 23, 1981. The case was converted to chapter 7 on September 30, 1981.

At the time of the filing of the petition, the Knights of Columbus Philadelphia Credit Union (hereinafter "the credit union") held three judgments against the debtors entered in the Philadelphia Court of Common Pleas: (1) No. 1009, May Term 1978, in the amount of $5,106.00; (2) No. 1473, December Term 1978, in the amount of $5,025.00; and (3) No. 769, July Term 1981, in the amount of $6,783.83. The first two judgments were entered by confession on two notes signed by the debtors. The entry of these judgments effected a judicial lien on the debtors' real property. *See* 42

---

1. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Bankr. Rule 7052.

Pa.C.S. § 4304. The third judgment was entered by default in an assumpsit action. The assumpsit action was based primarily on the debtors' failure to pay the two notes which were the basis of the confessed judgments.[2]

After the entry of the default assumpsit judgment, the credit union initiated execution proceedings against the debtors' residential real property and the property was listed for the sheriff's sale scheduled on October 5, 1981. The debtors then filed their bankruptcy petition which stayed the sale.

On October 6, 1981, pursuant to 11 U.S.C. § 522(f), the debtors filed a complaint to avoid lien against the credit union to avoid a judgment lien at Adversary No. 81–1341.[3] The complaint, inadvertently, sought avoidance of the confessed judgments only.[4] On December 8, 1981, this court entered an order avoiding the two confessed judgments.[5]

From December 1981 through April 1986, the credit union, believing that all of its liens had been avoided by the December 8, 1981 order, made no attempt to enforce the assumpsit judgment. Some time in 1986, the debtors entered an agreement for the sale of their real property. In April 1986, counsel for the credit union was con-

tacted by the title company which was handling the sale of the property and was informed that a title report showed the assumpsit judgment as a lien in favor of the credit union. The credit union's counsel sent a letter requesting $6,783.83 as the payoff figure for the assumpsit judgment. The property was sold in May 1986 and the credit union received payment from the sale proceeds.

Subsequently, the debtors' counsel filed an application to reopen this case. The court, apparently without requiring compliance with Bankr. Rule 5010 (allowing cases to be reopened "on motion") and Local Bankr.Rule 9014.1 (requiring clerk to set a hearing date) granted the application by order dated June 24, 1986. The debtors' complaint was filed about three weeks later. Trial of this matter was held on January 14, 1987.

## II.

■ In light of the procedural irregularity which accompanied the reopening of this bankruptcy case, I will first consider the credit union's argument that the debtors may not avoid a lien subsequent to the closing of their bankruptcy case which they knew or should have known existed at the

---

2. The origin of the indebtedness which was the basis of the assumpsit judgment is not entirely clear from the record. At trial, there was testimony that the assumpsit complaint had two counts and that the first count related to a confession of judgment entered in 1976. The lien arising from the 1976 judgment had not been revived prior to the bankruptcy filing. The second count was based on the same indebtedness as one or both of the confessed judgments. The testimony did not precisely apportion the amount of the assumpsit judgment as between its two counts. The post-trial memoranda make no reference to this trial testimony and, surprisingly, both sides appear to state that the assumpsit judgment was based entirely on the same indebtedness as the confessed judgments. Notwithstanding this confusion, it appears, at a minimum, that the primary component of the assumpsit judgment was the same indebtedness as one or both of the confessed judgments.

3. This lien avoidance proceeding preceded the effective date of Bankr.Rule 4003(d), which provides that lien avoidance proceedings under 11 U.S.C. § 522(f) shall be commenced by motion.

4. The evidence suggests that the debtors and their counsel were on notice of the assumpsit judgment. The schedules list the indebtedness to credit union in the amount of the assumpsit judgment. Also, after the bankruptcy was filed, debtors' counsel wrote a letter to the credit union's counsel advising him of the stay of the October 5, 1981 sheriff's sale. The filing of the adversary proceeding in this court clearly evinces the debtors' intent to exercise their rights under 11 U.S.C. § 522(f) to avoid judicial liens which impair their exemptions. I conclude, therefore, that counsel's failure to list all three judgments in the lien avoidance complaint was an error.

5. The debtors' complaint in 1981 and the order entered by the court erroneously identified the first of the two confessed judgments as being entered at "March" Term rather than "May" Term 1978. Nevertheless, the credit union, apparently unaware of the error, made no effort to enforce the lien and treated it as avoided.

time the case was closed. In making this argument, the credit union relies heavily on the line of cases which disfavors motions to reopen cases for the purpose of avoiding liens. *E.g., Matter of Busch,* 40 B.R. 591 (Bankr.W.D.Pa.1984); *In re Adkins,* 7 B.R. 325 (Bankr.S.D.Cal.1980).

The cases cited by the credit union represent the minority view on the question. Recently, in *In re Quackenbos,* 71 B.R. 693, 696 (Bankr.E.D.Pa.1987), I adopted the majority view and held that "a debtor may reopen a bankruptcy case in order to initiate lien avoidance proceedings unless the creditor has been prejudiced by the delay." Based on *Quackenbos,* I reject the credit union's initial argument.

Nor do I find that the credit union has been prejudiced by the delay. The credit union made no attempt to enforce any surviving lien after December 1981 and incurred no costs. Its only actions were to send a letter to the title company containing a payoff figure and then accept payment.

The credit union suggests, however, that it is prejudiced by the delay because (1) a section 522(f) lien avoidance proceeding commonly turns on the determination of the value of the property claimed as exempt; (2) expert testimony is often necessary on the issue of value and (3) the ability of a real estate appraiser to offer a reliable opinion as to the value of a property deteriorates when the expert must determine the value of property in years past. *See In re Montemurro,* 66 B.R. 124, 125 (Bankr.E.D.N.Y.1984). I am unpersuaded by this argument. Any prejudice suffered by the credit union is more attributable to the litigation choices it made in 1981 than to the debtors' delay.

When the debtors filed their lien avoidance complaint in 1981, the credit union filed an answer. After further evaluation of its case, the credit union then decided not to further contest the lien avoidance, resulting in the entry of the court's order of December 8, 1981. It is apparent, from these uncontested facts, that if the credit union had any serious belief that the value of the property exceeded the statutory exemption, it would have pressed its claim in 1981. In short, this is not a case in which the creditor was wholly without notice of the debtors' intent to avoid the lien and, as a result of the delay, can no longer mount an effective defense.[6] To the contrary, here, the credit union itself made a considered decision, while the bankruptcy case was still open, to forego litigation and preservation of the evidence that potentially could have been relevant in a later proceeding.[7] Therefore, I do not find that the credit union has been prejudiced or that it would be inequitable to allow the debtors' to reopen this case for consideration of their claim.

### III.

On the merits, the credit union argues that a debtor may not avoid a judicial lien under section 522(f) after the debtor has transferred title to the property which was subject to the lien. The credit union cites three cases which support its argument. *In re Vitullo,* 60 B.R. 822, 824 (D.N.J.1986) (plain language of section 522(f) requires that debtor "own" the property at the time of the lien avoidance); *In re Carilli,* 65 B.R. 280, 282–83 (Bankr.E.D.N.Y.1986) (after residence has been sold, there is no policy reason to protect the homestead exemption of 11 U.S.C. § 522(d)(1));[8] *In re Montemurro,* 66 B.R. at 124–25 (similar rationale as *Vitullo* ). The debtors cite no

---

**6.** As a result of this conclusion, I need not decide whether a showing that the reliability of expert testimony on property valuation has been diminished by the passage of time, by itself, is grounds for denying a motion to reopen a bankruptcy case for lien avoidance.

**7.** This is not to say that, as a general matter, the credit union's decision to forego litigation in one proceeding would collaterally estop it from

litigating the valuation issue or any other issue in another lien avoidance proceeding. However, as explained in Part III, *infra,* this particular case may be resolved without further litigation on the issue of value.

**8.** In its consideration of the issue and the fresh start policy embodied in the exemption provisions, the *Carilli* court did not discuss the significance, if any, of 11 U.S.C. § 522(d)(5).

cases on the issue but seek to distinguish *Vitullo, Carilli* and *Montemurro,* pointing out that in none of those cases was the debtor attempting to avoid a judgment based upon the same debt as a prior judgment which had been avoided timely in the bankruptcy proceeding.

I find that the answer to this dispute in Pennsylvania Act 6 of 1974, 41 P.S. § 407(a), which provides:

> As to the residential real property, a plaintiff shall not have the right to levy, execute or garnish on the basis of any judgment or decree on confession, whether by amicable action or otherwise, or on a note, bond or other instrument in writing confessing judgment until plaintiff, utilizing such procedures as may be provided in the Pennsylvania Rules of Civil Procedure, files an appropriate action and proceeds to judgment or decree against defendant as in any original action. *The judgment by confession shall be changed as may be appropriate by a judgment, order or decree entered by the court in the action. After the above mentioned original action has been prosecuted and a judgment obtained, that judgment shall merge with the confessed judgment and the confessed judgment shall be conformed as to amount and execution shall be had on the confessed judgment.* The parties to the action shall have the same rights as parties to other original proceedings....

(emphasis added).

Under this section, a creditor holding a confessed judgment against residential real estate may not execute against the real estate unless a second, "appropriate action" is filed and reduced to judgment. An appropriate action is one which proceeds "as in any original action." *Id.* Thus, an appropriate action, as opposed to a confession of judgment, allows the defendant to answer and defend the litigation before the entry of judgment. *Compare* Pa.R.Civ.P. 2981 (appropriate action's procedure shall generally conform to the civil action rules)

*with* Pa.R.Civ.P. 2951 *et seq.* (allowing entry of judgment upon filing of complaint and confession).[9] Any judgment entered in the second, appropriate action merges with the original, confessed judgment. 41 P.S. § 407. The statute also provides that the confessed judgment shall be conformed in amount to the judgment entered in the second, appropriate action. *Id.*

As I construe section 407, it appears to have the following purposes and consequences: (1) as a consumer protection provision, it delays execution against residential real property until the homeowner has an opportunity to contest the creditor's claim, *see General Electric Credit Corp. v. Slawek,* 269 Pa.Super. 171, 409 A.2d 420 (1979); (2) it protects the creditor's lien priority by merging a judgment obtained in the second lawsuit with the confessed judgment; and (3) it allows for only a single satisfaction of a single debt through the merger of the judgments and the requirement that the confessed judgment be conformed to the amount of the second judgment.

 In the case at bar, as a result of section 407, the assumpsit judgment, at least to the extent that it was based on the same notes and indebtedness as the confessed judgments, merged with those judgments. In the absence of any precedent to guide me, I conclude that the debtors' avoidance of the confessed judgment vitiated the effect of the assumpsit judgment insofar as it merged with the confessed judgments. I reach this conclusion for two reasons. First, the statutory language contemplates that the second judgment merges into the confessed judgment rather than vice-versa. This is suggested by requirement that the confessed judgment be conformed to the amount of the assumpsit judgment and the statutory declaration that "execution shall be had on the confessed judgment." These provisions would make no sense if the confessed judgment were to merge into the judgment obtained

---

**9.** In this case, rather than proceeding under Rules 2981–86 the credit union instituted an assumpsit action which, as a proceeding containing the same procedural safeguards of no-tice and opportunity to be heard as Rules 2981–86, is an "appropriate action" under 41 P.S. § 407.

in the second action. Second, the thrust of the statute is to render the confessed judgment and the second judgment into a single obligation and a single lien for the same indebtedness. Where the debtor has avoided the underlying confessed judgment liens, it is not inequitable to treat the related assumpsit judgment as avoided as well.

 I further hold that the debtors may not avoid the assumpsit judgment lien to the extent it was based on any indebtedness other than the notes which were the basis of the confessed judgments. I reach this conclusion based on the rationale articulated in *Vitullo*.[10]

In short, for the reasons set forth above, I find that the assumpsit judgment lien was only partially avoided by the December 8, 1981 order and that the debtors may not now avoid the balance of the lien. Since the record is inadequate, I cannot quantify the monetary amount of the lien that survived the 1981 lien avoidance. However, the parties, who have access to the facts, should have little difficulty resolving that question among themselves. If they can agree upon those facts, it is likely that the debtors' claim for damages can be resolved without further litigation. In the event the parties cannot resolve these issues, I will hold a further hearing to determine the necessary facts and make appropriate legal rulings.

An order consistent with this opinion will be entered.

### ORDER

AND NOW, this 27 day of March, 1987, upon consideration of the evidence submitted at the hearing held on January 14, 1987 and the parties' respective memoranda of law, it is:

1. DECLARED that the court's order of December 8, 1981, entered in Adversary No. 81–1341, had the effect of avoiding the judgment lien held by the Knights of Columbus Federal Credit Union entered at No. 769 July Term 1981 (C.P. Montg.) (hereinafter "the assumpsit judgment"), in-

sofar as the assumpsit judgment was based on the same indebtedness as the judgments entered by confession at No. 1009, May Term 1978 (C.P. Montg.) and No. 1473, December Term 1978 (C.P. Montg.).

2. ORDERED that in all other respects, the debtors' request to avoid the assumpsit judgment lien is DENIED.

3. ORDERED that the parties shall advise the court within ten days whether, in light of this order and accompanying opinion, they have settled this matter. If no settlement is reached, a prompt hearing will be scheduled.

---

**10.** On the facts of this case, I need not decide whether the same result applies if the funds in

dispute had not been paid to the creditor but instead had been held in escrow.