# Philadelphia Housing Authority v. Barbour

*Denise Baker,* for plaintiff.
*Michael Donahue,* for defendant.

D'ALESSANDRO, *J.,* May 17, 1990 — This is an opinion in support of this court's order of March 15, 1990. For the reasons stated herein, we sustained the preliminary objections of defendant Pearline Barbour and dismissed plaintiff Philadelphia Housing Authority's complaint.

The facts are not in dispute. In December 1989, Barbour appealed from the landlord-tenant judgment. of the Municipal Court of Philadelphia rendered on November 9, 1989. On said date, the Municipal Court entered judgment in favor of PHA and against Barbour for rental in the amount of $5,000 plus costs of $22, plus possession, which was granted on the basis of non-payment of rent only.

By filing the complaint, PHA sought to recover possession of rental property located at 708 North 20th Street, and arrearages, pursuant to the Home-buyers Ownership Opportunity Agreement between the parties (See 42 Pa.C.S. §1123(a)(3)). Barbour

argued, however, that HOOA is characterized as a land-sale contract and not an agreement that gives rise to a leasehold arrangement. As such, Barbour contends that PHA's proper recourse is an action in ejectment, which requires PHA giving to Barbour Act 6 and Act 91 notices. Both Act 6 and Act 91 are consumer-protection statutes which require that notices be sent to the homeowner prior to the institution of foreclosure proceedings. See 41 P.S. §403(a) and 35 P.S. §1680.403c. Specifically, Act 91 provides, inter alia, that prior to instituting any legal proceedings, the home buyer must receive a notice of the home buyer's rights to apply for financial assistance from the Pennsylvania Homeowners Emergency Assistance Fund to assist in helping the homeowner over a temporary financial difficulty. Accordingly, no actions can proceed until the notice has been given. (34 P.S. §1680.401(c)(a)). Likewise, Act 6 provides special advance notice and the right to cure and reinstate at any time up to one hour of the foreclosure sale (41 Pa.C.S. §101-605). Pennsylvania Act 6 was enacted to provide modest home buyers with a measure of protection from over-enthusiastic mortgagees. *Continental Bank v. Rapp,* 336 Pa. Super. 160, 485 A.2d 480 (1984). Pennsylvania Act 91 was enacted to ". . .prevent widespread mortgage foreclosures and distress sales of homes which result from default caused by circumstances beyond a homeowner's control." Preamble to Act 1983, December 23, P.L. 385, no. 91. Thus, the issue before this court is whether the HOOA is characterized as a land-sale agreement, or simply a leasehold arrangement.

An HOOA agreement arises under the Turnkey III program, which is designed to provide home ownership possibilities for low-income families. See 24 CFR §904.101. The program is funded by the

U.S. Department of Housing and Urban Development wherein HUD provides funding for low-income housing home ownership opportunities to the local housing authority, PHA in this case. The payments are in amounts sufficient to retire and amortize the purchase price obligation of a program home over a 30-year period. See 24 CFR §904.1001(b)(2).

In order to be eligible for the program, low-income families must meet certain income guidelines. These guidelines contain both maximum and minimum amounts. See 24 CFR §904.104(b). Once found to be eligible, the low-income family home buyer must execute a home ownership opportunity agreement. See 24 CFR §904.103(c).

The home buyer is required to make monthly payments to PHA based upon a percentage of the family's income. See 24 CFR §904.107(j). These payments are first credited to the earned home payments account. If the payment is sufficient to cover the required EHPA amount, the balance is credited to the non-routine maintenance reserve. If a balance still remains from the payment, it is credited to the operating expenses of the local housing authority. See 24 CFR §904.107(j).

The EHPA is a fund, generated from the home buyer's monthly payments, for the purpose of purchasing the home. See 24 CFR §904.110. The NRMR is an account also generated from the home buyer's monthly payments to be used for non-routine maintenance to the home, if necessary. The NRMR can also be used, in whole or in part, to meet the purchase price or to make a down-payment for the home. This decision is left exclusively to the discretion of the home buyer. See 24 CFR §904.111.

As the program proceeds, the payments from the annual contributions contract (from HUD) automatically reduce the purchase price for the home. These payments amortize the purchase price as if it were a normal mortgage. See 24 CFR §904.113. If a home buyer were to do nothing more than stay in his or her home for 30 years and make the monthly payments, the purchase price would be completely liquidated through the HUD annual contributions contract and the family would then automatically acquire title to the home.

The home buyer family, however, may acquire title prior to the complete payment of the debt by HUD. In order to do this, the home buyer must first be issued a certificate of home buyer status (after accumulating approximately 20 months of payments in the EHPA). Once the home buyer has the certificate, the home buyer may acquire title at any time by either using the funds in the EHPA to pay off the declining purchase price or by using the funds in the EHPA, as a down payment, to obtain financing to pay off the declining purchase price. The home buyer may use some or all of the funds in the NRMR towards the purchase price or down payment. See 24 CFR §904.113(c).

During the course of the agreement, the home buyer is responsible for all maintenance. See 24 CFR §904.107. The home buyer is also vested with certain rights to pass along HOOA rights to certain heirs. See 24 CFR §904.107(1)(2).

In the instant case, Barbour executed a HOOA on April 13, 1981, payments to be made in the amount of $243 per month to the PHA. Ms. Barbour encountered financial difficulties in mid-1987, and as a result, she was unable to make payments. As of July 1989, Barbour was in arrears of $5500. PHA therefore sought to regain possession of Barbour's

home through the instant landlord-tenant action. Barbour contends that this court has no jurisdiction to hear the PHA claim and has so stated in the instant preliminary objections. She argues that as the HOOA between the parties is a land sale agreement and not an agreement that gives rise to a leasehold arrangement, the failure to provide Act 6 and Act 91 notice deprives this court of subject-matter jurisdiction. We agree.

As defendant Barbour correctly states, Act 6 and Act 91 notices are jurisdictional requirements to sustaining an ejectment action, and failure to give such notice will result in the dismissal of the suit. *General Electric Credit Corp. v. Slawek,* 269 Pa. Super. 171, 176, 409 A.2d 420, 422 (1979); *In re Smith,* 866 F.2d 576 (3d Cir. 1989); *Main Line Federal Saving and Loan Association v. Joyce,* 632 F.Supp. 9 (E.D. Pa. 1986).

PHA does not refute the necessity of proper notice attendant to ejection actions. PHA instead contends that the HOOA represents a leasehold agreement and accordingly argues that Act 6 and Act 91 notice is not a prerequisite to sustaining a landlord-tenant action. We find that the HOOA represents a land sale contract, and therefore PHA's failure to give proper notice defeats jurisdictional requirements.

A review of the subject HOOA reveals that it was created in order to facilitate home ownership among low-income families. See 24 CFR §904.101. Furthermore, the agreement itself contains the elements of a land sale contract, as it clearly describes the property, defines price, time and manner of the sale, and reflects a clear intent of the parties to buy and sell. *Dillenger v. Ogden,* 244 Pa. 20, 90 Atl. 466 (1914). In addition, the provisions of the HOOA place the responsibility of repairs in the home buyer. See paragraphs 11(d) and 6(a) of Part II in

HOOA. Finally, two courts which have considered the nature of the HOOA have concluded that it does, in fact, embody a land sale agreement. In *Cuyahoga Metropolitan Housing Authority v. Watkins,* 23 Ohio App. 3d 20, 491 N.E. 2d 701 (Ohio App. 1984), the Ohio Court of Appeals affirmed the findings of the Cleveland Municipal Court and specifically characterized the HOOA as a land sale agreement. Consequently, the court concluded that the procedure for detainer and entry was not available to the Cuyahoga Metropolitan Housing Authority for disputes concerning Turnkey III agreements. The housing authority instead was required to pursue an action in ejectment, to which the sending of Act 6 and Act 91 notices is mandatory. See also, *Cook Inlet Housing Authority v. Viers,* case no. 3AN-82-8734 (Alaska Superior Court, 3d Judicial Circuit). Upon consideration of the instant case, this court, too, found that the HOOA is a land-sale agreement. Thus, the failure of PHA to provide the requisite notices deprives this court of subject-matter jurisdiction.

For the foregoing reasons, we sustained the preliminary objections of Pearline Barbour and dismissed PHA's complaint for lack of subject-matter jurisdiction.