## Pennsylvania Power & Light Co. v. Gulf Oil Corporation.

432

*K. Robert Conrad, Nancy J. Gellman,* and *Pepper, Hamilton & Scheetz,* for plaintiff.

*Thomas J. Calnan, Jr., Stamberg, Caplan & Calnan, Gordon W. Gerber, John E. Flaherty, Jr.,* and *Dechert, Price & Rhoads,* for defendants.

BACKENSTOE, *J.,* December 10, 1975— Defendants in this matter have petitioned the court to disqualify the law firm of Pepper, Hamilton and Scheetz ("Pepper") as counsel for plaintiff. The basis for the petition is that Pepper represented one of defendants, Gulf Oil Corporation ("Gulf"), in a prior proceeding which is substantially related to the pending matter. Pepper, while vigorously denying the merits of the disqualification petition, consulted with its client and offered to withdraw from the case because of the obvious delay a contest of the petition would necessitate. Plaintiff, having indicated to Pepper that it desires that firm to continue to represent it and having instructed it to proceed, depositions having been taken, briefs filed and argument held, the matter is now ready for disposition.

As noted by our Supreme Court, disqualification of party's counsel is a "serious remedy" and the court presented with such a request must be careful "to preserve a balance, delicate though it may be, between an individual's right to his own freely

chosen counsel and the need to maintain the highest ethical standards of professional responsibility.": Slater v. Rimar, Inc., 462 Pa. 138, 338 A.2d 584, 590 (1975).

The parties seeking the disqualification of their opponent's attorney must establish that (1) a prior attorney-client relationship existed in this case between Gulf and Pepper, and (2) the matters involved in Pepper's representation of P. P. & L. are substantially related to the subject matter of Pepper's alleged former representation of Gulf: American Can Company v. Citrus Feed Company, 436 F.2d 1125 (5th Cir., 1971).

Applying these standards to the instant case and after a careful review of the depositions as well as the briefs filed, we are of the opinion that Gulf has not sustained its burden of proving either requirement and, accordingly, the petition for disqualification must be dismissed.

Although the factual history leading to the filing of this petition is, at first blush, somewhat complex, an analysis of that history indicates that there is, in reality, no real factual dispute and the issues arising therefrom are reasonably clear.

In July of 1971, Gulf and a company known as United Nuclear Corporation decided for various reasons, unrelated to this action, to form a joint venture to engage in the light water nuclear reactor fuel business. In furtherance of this end, they formed a corporation known as the Gulf United Nuclear Fuels Corporation (GUNF). When GUNF was formed, Gulf owned 57 percent of the stock and United Nuclear owned 43 percent. While the great majority of the employes of GUNF personnel were former employes of United Nuclear Corporation, it is not disputed that all the key posts

in the company, namely, president, chief financial officer, chief legal officer and engineering officer, were former Gulf employes and that, in fact, Gulf had control of the board of directors. Pepper represented neither Gulf nor United Nuclear in the formation of this company.

In September of 1971, the Justice Department informed Gulf and United Nuclear, by separate letters, that it was studying their recent agreement to form GUNF and requested that each company provide information and other data to enable the Department of Justice to determine whether a joint effort would violate any of the Nation's antitrust laws. Because of this letter, United Nuclear hired Pepper to represent it before the Department of Justice. Throughout the investigation, Gulf was represented by various house counsel while United Nuclear was always represented by Pepper.[1]

As a result of this inquiry, there was a good deal of correspondence and numerous meetings between the attorneys for Gulf and Pepper, as attorney for United Nuclear. Throughout the proceedings, Pepper specifically informed the Department of Justice that they represented United Nuclear and, on various occasions, Messrs. O'Hara and Coleman, Gulf counsel, met with the Justice Department's investigators to produce certain documents and provide other information on behalf of Gulf. On one occasion, the Gulf house counsel had a representative of a Washington D.C. law firm accompany them in a meeting with the Department of Justice.

Some time prior to November 30, 1971, after

---

1. GUNF had its own counsel but they apparently did not participate in any manner in the Department of Justice inquiry.

conference of the attorneys involved, it was decided as a tactical matter that the "white paper," as the final report requested by the Department of Justice was termed, should be submitted by United Nuclear on behalf of both Gulf and United Nuclear, the theory being, as stated by Mr. Harkins, the Pepper attorney assigned to the case, in his deposition, ". . . that Gulf . . . would keep a low profile in this particular area and that since United Nuclear was known to the Department as a small and independent company . . . that tactically it would be wiser for United Nuclear to stand forth with the positive position paper."

Accordingly, on November 30, 1971, Pepper did submit a "memorandum concerning the competitive implications of the joint venture formed by United Nuclear Corporation and Gulf Oil Corporation." In the opening paragraph of this report, it was made specifically clear that the report was being presented on behalf of United Nuclear. Subsequently, Pepper wrote to the president of United Nuclear to ask whether it was a convenient time from United Nuclear's viewpoint for payment of Pepper's services in connection with the Justice Department inquiry. Mr. Harkins stated in his deposition that he knew at the time he wrote that United Nuclear was in trouble financially and, therefore, he also inquired if it would be suitable to have GUNF pay part of the bill. Upon receipt of the Pepper firm's letter, the president called the appropriate official of Gulf to discuss this possibility and the Gulf official, after reviewing the matter, agreed that since the "white paper" was submitted on behalf of both that they would pay one-half of the fee. The Pepper firm had no further contact with United Nuclear Corporation, or with Gulf for

that matter, until they instituted this suit on behalf of P. P. & L.

The instant litigation involves certain alleged contracts between P. P. & L. and Gulf and Scallop Nuclear, Inc., doing business as General Atomic Company. The initial negotiations leading to the alleged contracts took place in June of 1973 and were completed in November of 1974. In June of 1973, the P. P. & L. contracts were with GUNF. In September of 1973, Gulf bought out United Nuclear and GUNF became Gulf Nuclear Fuels, and subsequently the Gulf and Scallop Oil Corporation, trading as General Atomic Company, a partnership, completed the negotiations. It is on the basis of these undisputed facts that Gulf now seeks to disqualify Pepper as an attorney in the P. P. & L. litigation.

We believe that the deposition of Frank R. O'Hara is dispositive of the issues in this case. Mr. O'Hara, who admittedly was one of Gulf's attorneys throughout all these proceedings, testified that all the legal work incidental to the formation of GUNF had been done by Gulf counsel; that it was, in fact, a Gulf lawyer who represented GUNF; that at no time was Pepper ever authorized to make any representations or statements on behalf of Gulf; that, in order to hire outside counsel, it was necessary to secure the approval of Gulf's general counsel, that this was not done here and that no attempt was ever made to do so; that it is customary in dealing with the Department of Justice to advise the department who represents each firm and that at no time did Gulf advise the department that Pepper represented it. The factual basis for the alleged representation by Pepper of Gulf in defendants' brief is based on the statement

of Mr. O'Hara that, because Gulf relied on the "white paper" prepared by Pepper and submitted on behalf of United Nuclear, there was, a de facto representation by Pepper of Gulf. This proposition is simply not in accordance with existing law. Although the relationship of attorney and client may be implied from the conduct of the parties, such conduct must evidence an offer or request by the client for legal services and an acceptance of the offer by the attorney: E. F. Hutton & Co. v. Brown, 305 F. Supp. 371, 388 (S.D. Texas, 1969); 7 C.J.S., Attorney and Client, §§61-62, 65. It is clear that an attorney-client relationship exists only with the consent of both parties. As noted in Felix's Estate 52 D. & C. 37 (O.C. Allegheny 1945), such relationship is "personal, reciprocal, and confidential" and "[i]t must be entered into freely, fairly and advisedly by the attorney and client." See also Young v. Scarazzo, 30 D. & C. 2d 324, 334 (C.P. Lawrence 1963); 3 P. L. Encyc., Attorneys, §32. Such relationship may "not be forced upon one party without the consent of the other.": Young v. Scarazzo, supra.

The mere fact that Gulf relied on United Nuclear's work and, indeed, submitted some of the information upon which the report is based, is insufficient to create an attorney-client relationship, particularly where the parties are already represented by counsel. This situation is not unsimilar to two defendants being charged with joint possession of drugs, both being represented by counsel, and one of the attorneys files a motion to suppress on the basis of an illegal search and seizure. That attorney certainly does not represent the other defendant merely because he happens to be successful in the suppression of the evidence as to both

defendants. In Bailey, Oot & Ryan v. Butcher, Tanner & Foster, 240 N.Y. 323, 148 N.E. 537 (1925), Judge Cardozo noted that cooperation between attorneys whose clients had a common interest in a lawsuit, wherein one party voluntarily produces certain documents for the use by the other party's counsel, did not create a contract of appointment of one firm by clients of the other firm. We fail to see any difference in the instant case. Indeed, in our analysis, the real question of the case would be presented if immediately after the submission of the "white paper" by Pepper, United Nuclear and Gulf had had a falling out and litigation ensued. Would Pepper have been able to represent United Nuclear in that action? The answer again, in our opinion, is clearly "yes." Pepper simply did not represent Gulf at any time.

Nor do we find that because Gulf voluntarily consented, after the fact, to contribute a portion of Pepper's fee is in any way controlling. Admittedly, Gulf did benefit from Pepper's actions and this, of course, was the reason for the contribution. However, the question is not whether Gulf benefited, the question is whether Gulf was obligated to pay, or could have been required to pay, a portion of the bill. As noted by numerous authorities, "Parties who have benefited by the labors of counsel are not obligated to pay them *in the absence of a contract*.": Dickinson's Estate, 8 D. & C. 75, 76 (O.C. Philadelphia 1926) (emphasis supplied). See also Jett v. Merchants & Planters Bank, 228 F. 2d 156, 159 (4th Cir., 1955); Simmons v. Friday, 190 F. 2d 849, 851 (8th Cir., 1951); Bailey, Oot & Ryan v. Butcher, Tanner & Foster, 240 N.Y. 323, 148 N.E. 537 (1925).

In the instant situation, it is reasonably clear

that everyone involved knew that United Nuclear was hard pressed financially. Indeed, this was the reason for the formation of GUNF. Pepper brought up the matter of the bill with their client and asked if they thought it was possible to get contributions from other parties. This, in the writer's opinion, is clear evidence of who represented whom in the within matter. We think it pertinent that the bills for services rendered were all sent to United Nuclear and that United Nuclear, not Pepper, forwarded the statement to Gulf. Plaintiff's brief in this regard is persuasive. "If Harkins had agreed to represent Gulf, why would he have asked United Nuclear about the possibility of billing part of Pepper's services to GUNF? Why would United Nuclear have contacted Gulf and sent the statement to it? If Harkins had considered himself to be Gulf's counsel surely he would have simply billed Gulf directly without discussing the matter at all with United Nuclear. Moreover, it is interesting to note that when United Nuclear contacted Gulf about paying part of Pepper's bill, Gulf did not respond that it had retained Pepper as its counsel and therefore expected and was obligated to pay for Pepper's services."

The two cases relied on by defendants in this matter are inapposite. In E. F. Hutton & Co. v. Brown, supra, the court did, in fact, find the conduct of the parties to have created an attorney-client relationship between Brown and Hutton's counsel. However, the conduct referred to in that case was the fact that in prior proceedings Hutton's counsel formally entered an appearance as counsel for Brown and, moreover, Brown specifically identified Hutton's counsel as his counsel at these hearings. This, of course, is not in any way

similar to the instant case. In Handelman v. Weiss, 368 F. Supp. 258 (S.D. N.Y., 1973), the court specifically held that an attorney-client relationship did not exist between plaintiff's counsel and any of the defendants but ruled that the attorney should, nevertheless, be disqualified because he had been an attorney for an estate trustee pursuant to the Securities Investors Protection Act. The court concluded that this was sufficiently similar to a public employe situation so as to present an appearance of impropriety and thus disqualified the attorney under Canon Nine of the Code of Professional Responsibility. This, again, is not relevant to the instant case.

Finally, defendants argue that, essentially, GUNF was a United Nuclear Organization since it consisted of former employes of United Nuclear and, therefore, it still is a United Nuclear organization even though United Nuclear was bought out several years ago and never at any time had control of the corporation. We believe this argument is patently frivolous. The minute the United Nuclear employes were employed by GUNF, which was controlled by Gulf, they were no longer United Nuclear people. Obviously, the minute they became employes of GUNF, their loyalties would be to GUNF and thus Gulf, and to contend that even though Gulf at all times had complete control of GUNF, eventually 100 percent control, the Pepper firm in some way represented it is, in our opinion, absurd.

Nor do we find that defendants have proven the second essential requirement for disqualification and that is that the matters involved in Pepper's representation of P. P. & L. are substantially related to the subject matter of Pepper's alleged former representation of Gulf. There is no ques-

tion in the writer's opinion that some of the information which Pepper received from both United Nuclear and Gulf in the preparation of the "white paper" could be pertinent to the present litigation. Nevertheless, we question where such information is "substantially related" when the subject matter of the present suit is whether there is, or is not, a contract between General Atomic and P. P. & L., neither of whom were ever represented by Pepper at any time prior to the filing of the complaint in 1974.

We note further the initial negotiations which precipitated this litigation took place some 18 months, after the last representation by Pepper of United Nuclear.[2]

In view of the foregoing, we enter the following order.

## ORDER

And now, December 10, 1975, the petition for disqualification is denied.

2.  The "white paper" was submitted by Pepper to the Department of Justice on November 30, 1971. The first negotiations between GUNF and P. P. & L. took place on June 6, 1973, when P. P. & L. invited a number of companies to submit proposals based on written specifications prepared by P. P. & L. for supply of nuclear fuel.