In re Wilton B. JACKSON, Janet G. Jackson, t/a Greenbank Farm, A Partnership, Debtors.

In re Wilton B. JACKSON, and Janet G. Jackson, Individually, and as partners in Greenbank Farm, Debtors.

In re Walter B. JACKSON, and Carol E. Jackson, husband and wife, individually, and Walter B. Jackson, as a partner in Greenbank Farm, Debtors.

In re James R. LEONARD, Jr., Trustee, Plaintiff,

v.

Henry WESSEL, and Alan S. Carpel, individually and t/d/b/a Wessel and Carpel, A Partnership, Defendants.

Bankruptcy Nos. 81–00396T, 81–04010T and 81–04615T.
Adv. No. 82–2179T.

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 9, 1988.

As Amended Dec. 9, 1988.

James R. Leonard, Jr., Lancaster, Pa., Trustee.

Reeder Fox, Frank D. Chaiken, Michael M. Mustokoff, Athena Skaleris, Philadelphia, Pa., for defendants.

William J. Gallagher, Frederick P. Kramer, II, West Chester, Pa., for plaintiff.

## MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

### A. INTRODUCTION

For six years, the instant adversary proceeding was stayed pending resolution of jurisdictional issues raised by the decision in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Suddenly, however, it has become a fountainhead of legal issues and, in the matter before us, a subject of considerable paper-production as well. In an Opinion and Order of September 6, 1988, reported at 90 B.R. 126, we held that we could conduct the jury trial requested by the Plaintiff. We are now presented with the Defendant's Motion for Partial Summary Judgment, filed on August 29, 1988. This Motion is, in substance, limited in its usefulness in resolving this matter, or even narrowing the issues presented in it, because it merely pecks about at various isolated aspects of the Plaintiff's case, rather than seeking to level a serious blow to any significant aspect of it.

In particular, the Defendants herein seek to strike the Plaintiffs' claim for alleged loss of anticipated future profits and emotional injuries suffered by the Debtors, and for punitive damages for injuries to the Debtors' credit. The Defendants also move for summary judgment of that aspect of the Plaintiff's claim contending that they overlooked state law remedies available to stop the sheriff's sale of the Debtors' property in seeking relief from the bankruptcy court, and as to the claims of malpractice because there was allegedly no attorney-client relationship between them and the individual Debtors. The Plaintiff's lengthy response includes an attack on the Affidavit submitted by the Defendants' counsel in support of their Motion. We hold as follows: (1) The portions of defense counsel's affidavit objected to by the Plaintiff should not be stricken from the record; (2) The Defendants are not entitled to summary judgment as to any of the issues raised in the Motion, and therefore, it is denied in its entirety.

### B. PROCEDURAL HISTORY

The history of this proceeding from the filing of the initial underlying Chapter 11 case on February 4, 1981, through the date of our previous Opinion and Order of September 6, 1988, is already recited in that Opinion, 90 B.R. at 127–28, and hence we will only recite the developments in this matter since that date. On September 19, 1988, the Defendants followed our suggestion, at 90 B.R. 135 in that Opinion, and filed an interlocutory appeal and a Motion for Stay Pending Appeal of this court's interlocutory Order of September 6, 1988. The Plaintiff eschewed our suggestion that

he re-think persistence in his jury demand. *Id.* We granted the Defendants' Motion for a Stay on September 21, 1988. On September 19, 1988, the District Court, per the Honorable Marvin Katz, granted the Defendants' Motion for permission to file an interlocutory appeal.

Unknown to us when we filed our Opinion of September 6, 1988, the Defendants had set the instant pleading into motion a few days before, on August 29, 1988. Accompanying the motion was a supporting Affidavit of Reeder R. Fox, Esquire, lead defense counsel, and a lengthy Brief. The Plaintiff filed an even more sizable response to the Defendants' Motion, including a Motion to strike portions of Mr. Fox's Affidavit; Affidavits of one of the Plaintiff's attorneys, Frederick P. Kramer, II, Esquire, Debtor Janet G. Jackson, and Accountant Allan T. Schiffman; numerous portions of the pleadings; and a lengthy Brief. The Defendants countered with an Answer and a Supplemental Affidavit of Mr. Fox in support of their Motion. It is our observation that these filings were excessive and, largely, unnecessary in light of our disposition.

C. SUMMARY JUDGMENT MAY ONLY BE GRANTED TO THE DEFENDANTS AS TO ANY ISSUE IF AND ONLY IF THE COURT IS CONVINCED THAT THERE IS NO GENUINE ISSUE MATERIAL FACT AND THAT THE DEFENDANTS WILL INEVITABLY PREVAIL AS TO THAT ISSUE

Bankruptcy Rule (hereinafter "B.Rule") 7056 pursuant to which the Defendants' Motion was filed, incorporates Rule 56 of the Federal Rules of Civil Procedure (hereinafter "F.R.Civ.P."). F.R.Civ.P. 56(b) allows us to grant summary judgment for the defending party if we determine from our "examination of the allegations in the pleadings and any other evidential source available that no issue as to a material fact remains for trial, and the moving party is entitled to judgment as a matter of law." *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976). While the Supreme Court has recently stated that summary judgment is not to be regarded as "a disfavored procedural short cut," *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), courts have consistently been cautious in granting summary judgment. Earlier, the Supreme Court stated that "Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a bona fide dispute of facts between them." *Associated Press v. United States,* 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1944). More recent decisions of the Court of Appeals have characterized summary judgment as "'a drastic remedy,'" *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981), quoting *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981), in turn quoting *Tomalewski v. State Farm Insurance Co.,* 494 F.2d 882, 884 (3d Cir.1974). This court has also similarly characterized the summary judgment procedure. *See In re Saler,* 84 B.R. 45, 48 (Bankr.E.D.Pa.1988); *In re Leedy Mortgage Co.,* 76 B.R. 440, 445 (Bankr.E.D.Pa. 1987); *In re American International Airways, Inc.,* 74 B.R. 691, 696 (Bankr.E.D.Pa. 1987); and *In re H & H Beverage Distributors, Inc.,* 65 B.R. 243, 244 (Bankr.E.D.Pa. 1986).

As a result of the serious consequences of summary judgment, the burden of showing the absence of a genuine issue of material fact as to any issue presented in the motion has always been placed upon the moving party. *See* J. MOORE, MANUAL OF FEDERAL PRACTICE AND PROCEDURE, § 17.10[3] (1987 ed.). The Circuit Court of Appeals has frequently stated that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties. *See Hollinger, supra,* 667 F.2d at 405; *Ness, supra,* 660 F.2d at 519; and *Tomalewski, supra,* 494 F.2d at 884. We have followed these decisions in *Leedy, supra,* 76 B.R. at 445; and *H & H, supra,* 65 B.R. at 244. It is important to note that a motion for summary judgment is designed to be granted only when there is no material issue of fact or a lack of evidence to support a claim. Where there is evidence to be weighed, this is a

question for the fact-finder at trial and summary judgment is not appropriate. Where some inconsistent evidence is offered, parties are entitled to exercise their right of cross-examination. This allows the fact-finder to view the demeanor of the witness, an element which is not available in deciding a motion for summary judgment. "It may well be that the weight of the evidence would be found on a trial to be with defendant. But it may not withdraw these witnesses from cross examination, the best method yet devised for testing trustworthiness of testimony. And their credibility and the weight given to their opinions is to be determined, after trial, in the regular manner." *Sartor v. Arkansas Gas Corp.*, 321 U.S. 620, 628–29, 64 S.Ct. 724, 729, 88 L.Ed. 967 (1944). Therefore, the first responsibility of this court in determining each issue raised by the Defendants' motion for summary judgment is to decide whether there are any genuine material issues of fact, and if not, proceed to determine whether the Defendants are entitled to judgment as to such issue as a matter of law.

### D. THE PORTIONS OF DEFENSE COUNSEL'S AFFIDAVIT OBJECTED TO BY PLAINTIFF WILL NOT BE STRICKEN FROM THE RECORD

F.R.Civ.P. 56(e) requires that an affidavit in support of summary judgment must be made on personal knowledge, set forth facts as would be admissible in evidence, and shall show affirmatively that the affi-

ant is competent to testify to the matters stated therein.[1] This section further indicates that a court may allow affidavits to be supplemented by depositions, interrogatories, or further affidavits.

In the present case, counsel for the Defendant himself took the only Affidavit presented in support of the motion for summary judgment. A great portion of counsel's Affidavit would appear to be conclusory and without personal knowledge. Upon filing his responses to the Defendants' Motion, the Plaintiff noted this apparent violation of Rule 56(e) and additionally alleged that counsel for the Defendants was not an appropriate affiant because he would most likely not be, competent to testify at trial. In counter-response, the Defendants submitted a supplemental Affidavit which included copies of depositions not supplied previously. The supplemental Affidavit explained that the information contained in the initial Affidavit was gained while the counsel-affiant attended depositions. This affidavit also provided citations of pertinent sections of transcripts of depositions evidencing the testimony heard by counsel for the Defendant.

██ An affidavit that contains inadmissible matter is subject to a motion to strike. J. MOORE, *supra*, § 17.09,[2] at 17–30. In the absence of a motion to strike or other objection, the defects of the affidavit would be waived. *Id.*[3] Courts have also held that the entire affidavit need not be stricken and the court need only strike the inad-

---

**1.** (e) Form of Affidavits; Further Testimony; Defense Required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set

forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment if appropriate, shall be entered against him.

**2.** Citing *McSpadden v. Mullins*, 456 F.2d 428 (8th Cir.1972); *United States v. Dibble*, 429 F.2d 598 (9th Cir.1970); and *Perma Research and Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir.1969).

**3.** *In re Teltronics Services, Inc.*, 762 F.2d 185 (2d Cir.1985); *Scharf v. United States Atty. Gen.*, 597 F.2d 1240 (9th Cir.1979); *Williams v. Evangelical Retirement Homes*, 594 F.2d 701 (8th Cir.1979); and *Lacy v. Mutual Ins. Co. of Boston*, 554 F.2d 1204 (1st Cir.1977).

missible parts. *Id.*[4]

We will recognize the Plaintiff's objection to the Affidavit of counsel as properly raising this issue without need for a formal motion. The Plaintiff asserts that defense counsel's initial Affidavit was made without personal knowledge of the facts stated therein. In order to properly consider this allegation, we must first decide whether to permit the Defendants' submission of their supplemental Affidavit. The language of F.R.Civ.P. 56(c) states that the information available to the court in deciding a motion for summary judgment may include pleadings, depositions, answers to interrogatories and, admissions on file together with the affidavits filed.[5] This broad category of evidence available for consideration, plus the provision of F.R.Civ.P. 56(e) expressly allowing "affidavits to be supplemented," causes us to conclude that *all* competent evidence submitted to the court should be considered in deciding a motion for summary judgment, whether submitted initially or in response to objections to the motion. Therefore, we will consider the Defendants' supplemental Affidavit.

Taking the Defendants' affidavits together, we turn to the issue of whether counsel-affiant had personal knowledge of the facts alleged. Counsel's supplemental Affidavit addresses each section of his initial Affidavit under objection. The court is then referred to portions of the transcripts that are already on the record in this matter as support for the statements included therein. The Defendants' counsel, having been in attendance at the depositions in question, and having heard the statements made by the deponents, certainly has personal knowledge that the statements were made, although he could not make any averments as to the truth of the statements. While this limitation might be important if counsel *were* certifying as to the truth of the statements made, it is unimportant when the affidavit is merely restating and referring to statements elsewhere in the record.

There is no question that the Defendants have utilized a convoluted and highly-disfavored means of setting forth the facts to support their motion.[6] Were we prepared to grant any portion of the motion on its merits, we might be tempted to proceed to deny the Defendant's Motion on this basis. However, given our disposition here, we are inclined to rule that, by submitting the supplemental Affidavit containing the sources of counsel's knowledge, the instant motion can perhaps be distinguished from the cases cited by the Plaintiff where affidavits of counsel were stricken. Most of the motions considered in the cases cited in the Plaintiff's Brief concerned affidavits by attorneys containing conclusory and argumentative statements or opinions without other support in the record. *E.g.,* *Maldonado v. Ramirez,* 757 F.2d 48 (3d Cir.1985); *Gatling v. Atlantic Richfield Co.,* 577 F.2d 185 (2d Cir.1978); and *Mercantile Nat. Bank At Dallas v. Franklin Life Ins. Co.,* 248 F.2d 57 (5th Cir.1957). In contrast, the objectionable portions of counsel's Affidavit are based on materials already contained in the record. It is important to note that the contents of defense counsel's Affidavit could be considered by us in deciding this motion notwithstanding our granting of this motion to strike, since the subjects covered are already in the record and we are required to consider all evidence in the record including the depositions pursuant to F.R.Civ.P.

---

**4.** Citations included at *id.* nn. 29 & 30 are omitted.

**5.** (c) Motion and Proceedings Thereon. The motion shall be served at least 10 days before the time fixing for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**6.** *See Inglett & Company, Inc. v. Everglades Fertilizer Company, Inc.,* 255 F.2d 342 (5th Cir. 1958).

56(c). Additionally, "Rule 56(b) permits a motion to be made without supporting affidavits and Rule 56(c) contemplates that the court shall consider 'the pleadings, depositions and admissions on file, together with the affidavits if any.'" *Hoston v. J.R. Watkins Co.*, 300 F.2d 869, 870 (9th Cir. 1962). Additionally, "an attorney's affidavit not upon personal knowledge or *referable to sources of actual knowledge of the facts*, leaves the record for purposes of summary judgment as it was without any affidavit at all" (emphasis added). *Christophides v. Porco*, 289 F.Supp. 403, 407 (S.D.N.Y.1968). We infer from this statement that an attorney's affidavit which refers to actual facts such as statements made by a party could be acceptable to the court. Therefore, for the foregoing reasons, and for the reason that the court must consider the contents of the depositions in reference therein in any event, the affidavit of the Defendants' counsel will not be stricken. We do note that, by properly referencing only the primary sources, instead of utilizing the secondary source of its counsel's affidavits, the Defendants would have significantly reduced the paperflow surrounding the presentation of this motion.

E. THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT AS TO THE PLAINTIFF'S CLAIM FOR DAMAGES FOR LOSS OF FUTURE ANTICIPATED PROFITS AS A MATTER OF LAW

The Plaintiff seeks, as an element of damages, profits which he claims that the Debtors lost as a consequence of the failure of their hog-farming business, which in turn was allegedly caused by the Defendants' failure to properly represent their interests in these bankruptcy proceedings. The Defendants argue that, in Pennsylvania, "the courts are reluctant to award [lost profits], except when the business is established and not 'new and untried'." *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 120, 464 A.2d 1243, 1258 (1983). However, several authorities have held that, under Pennsylvania law, it is improper to conclude that new businesses cannot, as a matter of law, submit sufficient evidence to obtain an award for lost profits. *See Blackwood Coal Co. v. Diester Concentrator Co.*, 626 F.Supp. 727, 731–32 (E.D.Pa.1985); and *Merion Spring Co. v. Muelles Hnos. Garcia Torres*, 315 Pa.Super. 469, 487, 462 A.2d 686, 698 (1983). The *Blackwood* court further stated, citing *Merion*, that "it is often very difficult for a new business to obtain such proof and what is often presented is far too speculative to support an award of damages for future lost profits, but the party seeking the damages should be given an opportunity to present the available evidence." 626 F.Supp. at 731. Thus, Judge Huyett, in *Blackwood*, denied a motion for summary judgment which raised an argument similar to that raised by the Defendants as to claims for lost profits here.

While the Pennsylvania Supreme Court has held that damages for lost profits for new and untried businesses are generally not awarded, this holding was limited to the facts of the case before it, involving a drive-in theater which had sued a paving company for loss of profits for a time when the movie screen had not even been erected. *Exton Drive–In v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319 (1979). Where damages were considered for a new business which had commitments for sales, recovery of loss of profits was not prohibited as a matter of law in *General Dynafab Inc. v. Chelsea Industries Inc.*, 301 Pa.Super. 261, 447 A.2d 958 (1982). Generally, upon reasonable proof of such loss, loss of profits can be recovered. *See In re Chapman*, 77 B.R. 1, 6–7 (Bankr.E.D.Pa.1987); and *Taylor v. Kaufhold*, 368 Pa. 538, 84 A.2d 347 (1951). Clearly, damages for loss of profits cannot be awarded when they are merely speculative. Evidence must be introduced which forms a sufficient basis for estimating with reasonable certainty the amount of lost profit.

Lost profits have been denied when they were requested by businesses which were only established from three to nine months in *Rappucci v. A.T. & T. Information Systems, WL. 5707*, C.A.No. 85–4462 (E.D.Pa. May 16, 1986) [available on WESTLAW,

1986 WL 5717]; *Poultry Health Service of Georgia, Inv. v. Moxley,* 538 F.Supp. 276 (S.D.Ga.1982); and *Pollock v. Morelli,* 245 Pa.Super. 388, 369 A.2d 458 (1976). However, these cases, in addition to involving relatively new businesses, involved claims for damages which were either not readily ascertainable or not proven with reasonable certainty.

The Defendants also cite to a line of cases which hold that business which do not show a sufficient earning power should be denied damages for loss of profits as a matter of law. A plaintiff's claim was rejected as too speculative due to his inability to make a profit prior to problems developing with equipment supplied by the Defendant which gave rise to a suit for breach of contract. *Rich v. Eastman Kodak Company,* 583 F.2d 435 (1978). Lack of consistent earning power or continual worsening condition of a business has also been held to preclude damages for loss of profits. *Eazor Express, Inc. v. Int'l Brotherhood of Teamsters,* 520 F.2d 951, 968 (3d Cir.1975); and *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.,* 246 F.Supp. 419, 421 (W.D.Pa.1965).

This case presents a number of genuine material issues of fact which must be determined before we could hold, as a matter of law, that the Plaintiff can or cannot recover damages for loss of the Debtors' anticipated future profits. While the Defendants argue that the Debtors' business was new and untried, the Affidavit of Janet G. Jackson indicates that hog-farming was at least part of the family's business since 1974. While the Defendants argue that the Debtors failed to make a profit during three years of operation, the Debtors argue that they made a gross profit during their years in business and that much of the "paper" losses were due to start-up costs and depreciation deductions. The Plaintiff has submitted the affidavit of Mr. Schiffman, an accountant, who stated that the business was viable and that he could predict future profits which the Debtors' business could have generated. The Plaintiff claims that a number of reorganization plans were presented to the Defendants and that Plaintiff's expert will be able to testify as to the validity and feasibility of at least one of them.

The factor most relevant to the instant motion is that the plaintiffs in the cases cited above had the opportunity for a trial before their claims for damages of lost profits were rejected. The Defendants have failed to cite any persuasive cases where summary judgment was granted on this issue in this jurisdiction. In *Rich, supra,* the court affirmed a summary judgment because the plaintiff failed to show that it was making *any* profit prior to the breach of contract giving rise to the cause of action. In the case at bar, the Plaintiff has averred that the business did make a profit, and Mr. Schiffman has submitted an affidavit stating that he is prepared to develop aspects of the case dealing with the alleged damages. While we are of course uncertain of the ultimate validity of the Plaintiff's claims on this point, the Plaintiff has raised material issues of genuine fact which, being construed in a light most favorable to the Plaintiff, precludes our granting the Defendants' motion for summary judgment on this issue. This case is distinguishable from *Rich* and closer in its facts to the lower court decision of *Pee Jay's Packing Co. v. Makfil Systems,* 34 Pa.D. & C.3d 285 (Phila.Co.C.P.1983) (per TAKIFF, J.), in which summary judgment was denied to allow the jury to consider evidence submitted on the question of damages of alleged lost profits. Based on the record presently before us, we cannot and therefore will not hold, as a matter of law, that the Plaintiff will be unable to present the requisite degree of proof to prevail on the issue of damages for anticipated future profits.

## F. THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM FOR INJURY TO THE DEBTORS' CREDIT

■ Under Pennsylvania law, a party may recover damages for injury to credit reputation. *See Johnson v. Four States Enterprises, Inc.,* 355 F.Supp. 1312, 1318–19 (E.D.Pa.1972). "It is well settled law in Pennsylvania that a tortfeasor is liable for

all damages which ordinarily and in the natural course of things have resulted from the commission of the tort." *Frank v. Volkswagenwerk, A.G. of West Germany,* 522 F.2d 321, 323 n. 1 (3d Cir.1975). The Plaintiff thus may be able to recover damages for injury to the Debtors' credit under a tort theory. Pennsylvania law is also well settled that any consequential damages that were foreseen at the time the contract was entered and are the probable result of the breach will also be recoverable. *Krauss v. Greenbarg,* 137 F.2d 569, 571 (3d Cir.1943). Generally, where one party to a contract without legal justification breaches such contract, the other party is entitled to recover whatever damages he suffered, provided that they were such as would naturally and ordinarily result from breach, they were reasonably foreseeable and within contemplation of the parties at the time they made the contract, and they can be proved with reasonable certainty. *Keystone Floor Products Co. v. Beattie Mfg. Co.,* 432 F.Supp. 869, 879 (E.D.Pa. 1977); *In re Spinning Mills, Inc.,* 43 B.R. 365, 367 (Bankr.E.D.Pa.1984); and *Keystone Diesel Repair Co., Inc. v. Irwin,* 411 Pa. 222, 224, 191 A.2d 376, 378 (1963).

Contrary to the assertions in the Defendant's Brief, it is not undisputed that the Defendant's actions caused no injury to the Debtors' credit. Paragraph 61 of the Plaintiff's Complaint specifically alleges that the Debtors' credit was damaged by the filing of the bankruptcy petition. While the Defendant argues that any credit which the Debtor had was destroyed prior to the bankruptcy filing, he admits that the Debtors were able to retain a number of credit cards and purchase an automobile during the bankruptcy, evidencing some retention of creditworthiness by the Debtors after the bankruptcy filing. In her deposition, Ms. Jackson also alleged that the Debtors have been unable to finance a residence strictly as a result of the filing of the initial bankruptcy and the subsequent cases made

necessary by the alleged mishandling of the initial case by the Defendants. Since the Plaintiff has alleged that the Debtors may have been able to reorganize without the filing of a petition, and we shall not dismiss claims based on such allegations, see pages 996–997 *infra,* it is certainly possible that Debtors could have rehabilitated any previous damages to their credit in the long period that this proceeding has been pending had the initial bankruptcy not been filed. If the Plaintiff is successful in proving that the Debtors could and should have avoided the initial bankruptcy filing, and that such filing damaged their credit rating, they may also be able to show losses of income and credit opportunities resulting from diminution of their credit reputations with enough specificity to recover damages for injury to same.

The Plaintiff's allegations of damages to credit, standing alone, are not compensable without proof that the Debtors' loss of credit resulted in some pecuniary damages. *Johnson, supra,* 355 F.Supp. at 1318.[7] While the Plaintiff must prove both a causal relationship between the bankruptcy and the ensuing damages, the Defendants' reliance on the Opinion in *Altoona Clay Products,* appearing at 246 F.Supp. 419, *supra,* is misplaced concerning the necessity of the Plaintiffs to plead specific damages resulting from specific instances of credit being refused to the Debtors. While the *Altoona Clay Products* case was a libel action, the requirements to plead and prove damages to credit reputation are substantially the same as in this action. In the case at bar, the Plaintiff has alleged pecuniary damages to the Debtors' credit reputation as a result of the filing of the bankruptcy petition, and has specifically pointed to a denial of an application for financing of a residence in establishing such damages. The failure to provide greater specificity should not, we believe, be sufficient to preclude this court from at least allow-

---

**7.** "The present state law of the law in Pennsylvania as to loss of credit as an element of damage is held to be that loss of credit, standing alone, is not proof of damage, unless the loss of credit connected itself with some tangible pecuniary loss of which the loss of credit was the cause."

355 F.Supp. at 1318. *See also, Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.,* 286 F.Supp. 899, 904 (W.D.Pa.1968); *Smith v. Western Union Telegraph Company, Inc.,* 150 Pa. 561, 24 A. 1049 (1892); and *Eckel v. Murphey,* 15 Pa. 488, 495 (1850).

ing the Plaintiff to present evidence on this issue at trial. While the Defendants have relied on the above-cited *Altoona Clay Products* decision, they have neglected to cite an earlier decision in the same case which is in a similar procedural posture to that of the instant motion. *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.,* 37 F.R.D. 460 (W.D.Pa.1965). In this earlier decision, the court denied a summary judgment motion contending that the pleadings were insufficient to sustain a cause of action for *libel per quot,* which also must be pleaded with specific facts and averments concerning any special damages sought. In so doing, the court held that the Defendant's opportunity for extensive discovery rendered any insufficiencies in the pleadings immaterial. Here, also, the Defendants have had an ample opportunity to learn the details of the claim before them, and have apparently done so. The Defendants should be fully informed of the Plaintiff's claims on this issue and be in a position to defend them.

In reviewing the totality of the record with respect to damages for injury to credit, there appear to be genuine issues of material fact and sufficient factual allegations to potentially support such a claim. Accordingly, the Plaintiff should be permitted to present any evidence necessary to resolve the factual issues, and this issue is not one which should be dismissed by summary judgment.

G. DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIMS THAT THE DEFENDANTS FAILED TO PROPERLY ADVISE THE DEBTORS THAT THEY COULD ATTACK THE STATE COURT JUDGMENT ENTERED AGAINST THEM

■ Although it is not clear from either the Complaint nor from examination of any of the documents attached to the parties' pleadings in connection with this motion, when the Debtors originally consulted the Defendant, they were faced with an imminent sheriff's sale of their property based upon a confessed judgment obtained against them by a mortgagee, the Lancas-

ter Production Credit Association (hereinafter "LPCA"). The Plaintiff alleges in paragraph 29 of his Complaint that the Defendants advised the Debtors to file "an unnecessary voluntary petition in bankruptcy when a tender of an account sufficient to cure defaults or remedies in the Pennsylvania State Courts were available and would have better served the [Debtors'] interests." Later, at paragraph 57–60 of the Complaint, it is alleged that malpractice arose from the Defendants' failure to inform the Debtors that, since they had the funds to do so, they could have cured the defaults and stopped the sheriff's sale.

■ In attempting to pigeonhole these rather vague allegations into a statutory matrix, the Defendants contend that the Plaintiff is attempting to aver that the Debtors had a "right to cure" under 41 P.S. § 101, et seq., generally known as Act 6 of 1974 (hereinafter "Act 6"), particularly 41 P.S. §§ 403, 404 thereof, and/or that they could have attacked the use of a confessed judgment against them in a foreclosure transaction, in violation of 41 P.S. § 407(a) thereof. Such contentions, the Plaintiff further advances, are without merit, because these provisions of Act 6 apply only to a "residential mortgage," which is defined, in Act 6, as an obligation to pay a sum of $50,000.00 or less. 41 P.S. § 101 (Definition of "Residential mortgage"). The obligation in issue here was a mortgage to LPCA in excess of $146,000.00, which is clearly not a "residential mortgage" as defined in Act 6.

The Plaintiff attempts to blunt this argument by contending that § 407(a) is not limited to its application to "residential mortgages," citing in his support a recent opinion of the Superior Court in *Drum v. Leta,* 354 Pa.Super. 448, 512 A.2d 36 (1986), which applies the mandatory attorney's fee provision of 41 P.S. § 407(b) to a transaction involving an obligation of $396,000.00. He also contends that the averments of paragraphs 57 to 59 of the Complaint are directed at the Defendants' failure to utilize rights to cure defaults accorded to debtors under the Bankruptcy Code as well as rights to cure under state law.

While we agree that the Complaint should be construed liberally in the Plaintiff's favor in considering a motion for summary judgment, we cannot agree with the Plaintiff's contention that paragraphs 57 to 59, when read in the context of paragraphs 29 and 60, make reference to the Defendants' alleged failure to make proper use of curative devices under the Bankruptcy Code, as opposed to those allegedly available under state law. Furthermore, the curative devices under the Bankruptcy Code would only come into play if there were a bankruptcy filing. The Bankruptcy Code devices therefore have no bearing on a contention that the Defendants could and should have avoided a bankruptcy filing altogether. It is the Plaintiff's allegation that bankruptcy could have been avoided altogether which is the target of this aspect of the Defendants' motion.

While not citing the *Drum* case, the Defendants do cite several cases which appear to hold to the contrary and restrict the application of Act 6 to controversies involving obligations of less than $50,000.00. These include *McDowell National Bank of Sharon v. Stupka,* 310 Pa.Super. 143, 151, 456 A.2d 540, 544–45 (1983); *General Electric Credit Corp. v. Slawek,* 269 Pa.Super. 171, 177 n. 5, 409 A.2d 420, 422–23 n. 5 (1979); and *Rake v. Loquasto,* 40 Pa.D. & C.3d 643, 645–46 (Monroe Co.C.P.1986).

We believe that the Defendants are, however, only partially correct in their assertions. It is true that the "right to cure" established in 41 P.S. §§ 403, 404 is restricted to "residential mortgage" obligations. Therefore, these provisions of Act 6 were not applicable to the Debtors' obligation with LPCA.

However, 41 P.S. § 407(a) is not limited in its application to "residential mortgages." It applies to "any residential real property." The term "residential real property," defined separately in 41 P.S. § 101, is *not* delimited by the definition of "residential mortgage" to only obligations of $50,000.00 or less. It includes any realty containing two or less residential units, and we assume that the Debtors' farm was their residence and therefore meets this

definition. Therefore, it seems clear to us that 41 P.S. § 407 could have been invoked by the Defendants as a means of attacking an attempt by LPCA to foreclose on the Debtors' farm on the basis of a confessed judgment.

We recognize that the *McDowell* decision apparently holds to the contrary and that the *Slawek* decision contains dictum to the contrary of our aforestated conclusion. However, neither case appears to grasp the distinction which we believe exists in the express statutory application of 41 P.S. § 407(a) to "any residential real estate," as opposed to only "residential mortgages." Moreover, the result of the *Drum* case, while the opinion does not discuss the issue nor distinguish *McDowell* or *Slawek,* obviously supports our reasoning. *Drum* is the most recent pronouncement of the Superior Court on the subject. We believe that it is clearly correct, and we are inclined to follow it. We note in passing that it is not unprecedented to conclude that certain provisions of Act 6 are applicable to a certain transaction, while others are not. *Cf. In re Jungkurth,* 74 B.R. 323, 329–31 (Bankr.E.D.Pa.1987), *aff'd,* 87 B.R. 333 (E.D.Pa.1988) (although Act 6 applies generally to business loans, the interest rate limitations are inapplicable to such transactions).

Furthermore, the Defendants had available to them an alternative basis of attacking the use of a confessed judgment by LPCA in that, in so doing, LPCA violated the Debtors' rights to due process of law. *See In re Souders,* 75 B.R. 427, 433–38 (Bankr.E.D.Pa.1987).

As we stated at the outset of this discussion, the Plaintiff's attack on the Defendants' failure to avail themselves of state-law remedies on behalf of the Debtors prior to filing bankruptcy is vague and unfocused. However, if the issue is defined, as the Defendants define it, as whether measures to attack LPCA's confessed judgment were available in state court, we cannot say that the Plaintiff's claims are wholly or even substantially without merit. We shall therefore deny this aspect of the Defendants' motion.

**998**

## H. THE DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE GROUND THAT THERE WAS NO ATTORNEY–CLIENT RELATIONSHIP BETWEEN THE DEFENDANTS AND THE INDIVIDUAL DEBTORS SUCH AS WOULD SUPPORT A MALPRACTICE CLAIM

■ The Defendants also advance a makeweight argument that they were only representing the partnership "Greenbank Farm" and not the Debtors in their individual capacities, thereby allegedly barring the Plaintiff from maintaining a malpractice suit against the Defendants' actions towards non-clients.

It is true that, traditionally, an attorney-client relationship is required between the plaintiff and defendant as a condition to maintenance of a legal malpractice action. *Sachs v. Levy*, 216 F.Supp. 44 (E.D.Pa. 1963); *Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983); and *Smith v. Griffiths*, 327 Pa.Super. 418, 476 A.2d 22 (1984). However, the *Guy* court reaffirmed the dicta stated in *Lawall v. Groman*, 180 Pa. 532, 540, 37 A. 98, 99 (1897), that a specific undertaking by the attorney furnishing professional services could suffice to support a legal malpractice action in the absence of strict privity between attorney and client. *Guy*, 501 Pa. at 55, 459 A.2d at 750. Suits for legal malpractice have also been upheld where the attorney-client relationship is implied. *Connelly v. Wolf, Block, Schorr, and Solis–Cohen*, 463 F.Supp. 914, 919 (E.D.Pa.1978). "An attorney-client relationship can, under certain circumstances, be implied from the conduct of the parties." *Id.*, citing *Westinghouse Electric Corp. v. Kerr McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978); *Committee on Professional Ethics & Grievences v. Johnson*, 447 F.2d 169, 174 (3d Cir.1971); and *Pennsylvania Power & Light Co. v. Gulf Oil Corp.*, 74 Pa. D. & C. 2d 431, 437 (C.P. Lehigh Co.C.P.1975). *See also* Annot., *Attorney's Liability, to One Other Than Immediate Client, for Negligence in Connection with Legal Duties*, 61 A.L.R. 4th 615 (1988). In *Westinghouse*, the court also noted that three District Courts have held that members of

unincorporated associations are clients of the Association's lawyers.

In the case at bar, the Defendants claim that they only represented the partnership, "Greenbank Farm." However, a partnership is merely the sum of its partners. The Defendants must have and clearly did meet with the individual Debtors in order to have provided legal services to the partnership during the course of the events in issue.

Moreover, among the specific allegations of the Complaint, at paragraphs 76 and 79, is a claim that the Defendants commingled the listing of individual assets of the Debtors on the bankruptcy petition with those of the partnership. Furthermore, the Plaintiff has alleged that the Defendants' advice concerning the Debtors' individual income tax filings was improper. Clearly, these claims are not restricted to the Defendants' representation of the Debtors' partnership.

In the context of a summary judgment motion, like the *Connelly* court, we cannot hold as a matter of law that an attorney-client relationship could not be implied between all of the individual Debtors and the Defendants. *See Connelly*, 463 F.Supp. at 919. Resolving all doubts in favor of the Plaintiff, there appears to be, at the very least, genuine issues of fact that would have to be resolved in favor of the Defendants before we could conclude that no attorney-client relationship existed between the parties.

■ We further note that, even if there was no attorney-client relationship between the Debtors and the Defendants, this is a suit by a trustee seeking to recover damages to bankruptcy estates by reason of the Defendants' actions. Attorneys representing a debtor have a fiduciary duty to the court and to creditors to preserve the bankrupt's estate. *Cf. In re J & J Record Distributing Corp.*, 84 B.R. 364, 369 (E.D. Pa.1988). In cases cited by both parties in reference to the issues raised in our September 6, 1988, Opinion, 90 B.R. at 130–31, courts held that causes of actions were stated against debtor's attorneys who had allegedly violated such fiduciary duties. *In re Landbank Equity Corporation*, 77 B.R.

44 (Bankr.E.D.Va.1987); and *In re Stockert Flying Service, Inc.*, 74 B.R. 704 (Bankr.N.D.Ind.1987). *See also In re Environmental Research & Development, Inc.*, 46 B.R. 774, 779 (Bankr.S.D.N.Y. 1985).

It is therefore far from clear that the individual Debtors were not clients of the Defendants. Even if they were not, the Plaintiff could prevail against them in this action on a number of theories. This contention of the Defendants can, therefore, be clearly rejected.

I.  WHILE THE PLAINTIFF'S DEMANDS FOR DAMAGES DUE TO EMOTIONAL DISTRESS AND PUNITIVE DAMAGES IN CLAIMS FOR BREACH OF CONTRACT ARE DOUBTFUL, THERE IS LITTLE TO BE GAINED BY GRANTING SUMMARY JUDGMENT AS TO ANY OF THESE CLAIMS

In the foregoing discussions, we have declined each of the Defendants' requests to strike certain specific substantive aspects of the Plaintiff's claims against them. In addition, the Defendants devote considerable energy to attempting to urge us to strike certain aspects of the Plaintiff's claims for damages. In particular, they argue that the following elements of damages should be stricken:

1.  Any claims for emotional distress, as to all of the Plaintiff's counts, based, respectively, on breach of contract, negligence, or malpractice.

2.  Any claims for punitive damages, particularly in reference to the Plaintiff's contract claim, but as to his other claims as well.

■ Although we have considerable skepticism that any aspect of this motion have aided us in narrowing the issues to be tried, we approach contentions that certain aspects of damages should be eliminated from certain claims with an even more heightened degree of skepticism of the value of such an undertaking. This is particularly true when the Complaint here is so vague and elusive in what it alleges. At trial, the Plaintiff will have the distinct burden of proving all aspects of his legal causes of action and elements of damages. At this stage, however, the burden is upon the Defendants to establish that each cause of action or element of damage could not conceivably be vindicated. This is a difficult burden and one that, in our view, is not accomplished despite the Defendants' considerable efforts.

Certain principles cited by the Defendants doubtless have merit. Punitive damages are not recoverable on a cause of action in contract under Pennsylvania law. *Kinnel v. Mid–Atlantic Mausoleums, Inc.*, 850 F.2d 958, 968 (3d Cir.1988). Claims for emotional distress will be very difficult to establish in a cause of action in contract, *see Kutner v. Eastern Airlines, Inc.*, 514 F.Supp. 553, 559 (E.D.Pa.1981), but are not totally inconceivable in the unlikely but possible scenario that it is established here that "'the breach is of such a kind that serious emotional disturbance was a particularly likely result.'" *D'Ambrosio v. Pennsylvania National Mutual Casualty Ins. Co.*, 494 Pa. 501, 509 n. 5, 431 A.2d 966, 970 n. 5 (1981) (quoting RESTATEMENT (SECOND) OF CONTRACTS, § 367 (Tent. Draft No. 14, March 1, 1979)). *See also, e.g., Rodgers v. Nationwide Mutual Ins. Co.*, 344 Pa.Super. 311, 319–20, 496 A.2d 811, 815–16 (1985); and *Rittenhouse Regency Affiliates v. Passen*, 333 Pa.Super. 613, 616, 482 A.2d 1042, 1043 (1984).

■ If the Plaintiff had asserted merely a cause of action in contract in his Complaint, we would have stricken the punitive damage claim and most probably the claim for emotional distress as well. However, in addition, the Plaintiff states a cause of action in negligence and another sounding in legal malpractice. We do not agree with the Defendants' contention that punitive damages and damages for emotional distress are not recoverable in a malpractice suit. In *Bangert v. Harris*, 553 F.Supp. 235, 238–39 (M.D.Pa.1982), applying Pennsylvania law, the court expressly declined to strike such claims set forth in a malpractice claim. We also stated, in *In re Tigue*, 82 B.R. 724, 737–38 n. 3 (Bankr.E.D.Pa. 1988), that breach of the particularly-sensitive fiduciary relationship between attorney and client may spark a claim for exem-

plary damages, even where the client suffered no actual damages. We do not read the principal authority cited by the Defendants, *Gautam v. DeLuca*, 215 N.J.Super. 388, 399–400, 521 A.2d 1343, 1348–49 (1987), as supportive of a striking of exemplary damages prior to trial of a malpractice case. There, with the benefit of a full record, the court simply held that the facts did not support such a claim.

We also observe the possibility that, like the *Bangert* plaintiff, 553 F.Supp. at 238–39, the Plaintiff may be relying upon the tort of intentional infliction of emotional distress as a partial basis for his claim. Like the *Bangert* court and the Court of Appeals, in *Wisniewiski v. Johns Manville Corp.*, 812 F.2d 81, 85 (3d Cir.1987); and *Bradshaw v. General Motors Corp.*, 805 F.2d 110, 113–15 (3d Cir.1986), we believe that Pennsylvania has long recognized this tort. *In re Frymire*, 87 B.R. 856, 860–61 (Bankr.E.D.Pa.1988). *But see Ford v. Isdaner*, 374 Pa.Super. 40, 542 A.2d 137, 139 (1988) (tort not recognized in Pennsylvania in light of decision in *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 527 A.2d 988 (1987)).

■ The Plaintiff's causes of action in contract and in tort are, in our view, jumbled together. Unless and until we actually conduct a jury trial, we do not consider it a particularly fruitful undertaking to strike certain damages as to the Plaintiff's contract claims, but allow them to remain intact as to the claims which sound in tort. As the headnote presages, we see little benefit to be gained by granting summary judgment as to any of the Plaintiff's claims. We shall therefore proceed to simply deny the Defendants' motion *in toto*, as to this as well as all other aspects, with the caveat that we recognize that certain of the damages claimed cannot be granted as to the Plaintiff's claims in contract.

## J. CONCLUSION

For all of the reasons set forth herein, the Defendant's motion for summary judgment will be denied in its entirety.